DOUGLAS A. WINTHROP (No. 183532)
douglas.winthrop@arnoldporter.com
JEREMY T. KAMRAS (No. 237377)
jeremy.kamras@arnoldporter.com
JOSEPH FARRIS (No. 263405)
joseph.farris@arnoldporter.com
TOMMY HUYNH (No. 306222)
tommy.huynh@arnoldporter.com
NINA LEVITEN (No. 351970)
nina.leviten@arnoldporter.com
MARK E. RAFTREY (No. 352610)
mark.raftrey@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:   415-471-3100
Facsimile:    415-471-3400

*Counsel for Defendant*
ADOBE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DUSTIN FORET,<br><br>                    Plaintiff,<br><br>        v.<br><br>ADOBE INC.,<br><br>                    Defendant. | Case No. 5:25-cv-9221-PCP<br><br>**DEFENDANT ADOBE INC.'S MOTION TO DISMISS, STAY, AND/OR STRIKE**<br><br>Assigned to: Hon. P. Casey Pitts<br><br>Date:  February 19, 2026<br>Time: 1:00 p.m.<br>Place: Courtroom 8 – 4th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

        A.      Adobe's Services And Its Subscription Model ....................................2

        B.      Plaintiff's Purchases and Adobe's Terms Of Use ...............................3

        C.      Plaintiff's Complaint ...........................................................................5

        D.      The Duplicative *Wohlfiel* Action ......................................................5

III.    STATEMENT OF ISSUES TO BE DECIDED ................................................6

IV.     LEGAL STANDARDS .....................................................................................7

V.      ARGUMENT .....................................................................................................7

        A.      This Action Should Be Dismissed As Duplicative Of The *Wohlfiel*
                Action Under The First-to-File Rule ....................................................7

                1.      The Chronology Of The Lawsuits Favors Dismissal ................8

                2.      The Similarity Of The Parties Favors Dismissal .....................8

                3.      The Similarity Of The Issues Favors Dismissal ......................9

        B.      In The Alternative, The Court Should Stay This Duplicative Action
                Pending Resolution of The *Wohlfiel* Action ....................................11

                1.      A Stay Is Warranted Under The Doctrine Against Claim-Splitting ..........11

                2.      The Court Should Issue A Stay Pursuant To Its Inherent Authority ........12

        C.      Plaintiff Failed To Fulfill The Conditions Precedent To Filing Suit
                Set Forth In The TOU's Dispute Resolution Provisions ...................13

        D.      Plaintiff's Claims Fail as a Matter of Law ........................................14

                1.      Plaintiff's Claims Are Barred By The 1-Year Contractual
                        Limitations Period ...................................................................14

                2.      Plaintiff Fails To Allege Reliance On Fraudulent Statements
                        Sufficiently .............................................................................16

                3.      Plaintiff's Claims Alleging That The "Annual, Billed Monthly"
                        Plan Is Misleading Fail To State A Claim As A Matter Of Law .............18

                4.      Plaintiff Does Not Allege He Is A Consumer As Required
                        Under The CLRA .....................................................................19

5.      Plaintiff Fails To Allege Any Entitlement To Injunctive And Other Equitable Relief ............................................................19

6.      Plaintiff Fails to Allege Entitlement to Declaratory Relief ......................20

E.      Plaintiff Cannot Pursue Class Claims Because The TOU Include An Enforceable Class Waiver.........................................................................24

VI.     CONCLUSION..........................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) ...................................................................10

*Aggarwal v. Coinbase, Inc.*,
  685 F. Supp. 3d 867 (N.D. Cal. 2023) .......................................................22

*Alvarez v. Safelite Grp., Inc.*,
  2022 WL 19569839 (C.D. Cal. Apr. 15, 2022) ......................................8, 10

*Anguiano-Tamayo v. Wal-Mart Assocs., Inc.*,
  2019 WL 359417 (N.D. Cal. Jan. 29, 2019) ..........................................11, 12

*Archer v. Carnival Corp.*,
  2020 WL 6260003 (C.D. Cal. Oct. 20, 2020) .............................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................7

*Barapind v. Reno*,
  225 F.3d 1100 (9th Cir. 2000) .....................................................................7

*Bazrganian v. Mercedes-Benz USA, LLC*,
  2017 WL 4990517 (C.D. Cal. Oct. 31, 2017) .............................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................7

*Bojorquez v. Abercrombie & Fitch, Co.*,
  193 F. Supp. 3d 1117 (C.D. Cal. 2016) .....................................................12

*Brosnan v. Dry Cleaning Station Inc.*,
  2008 WL 2388392 (N.D. Cal. June 6, 2008) ..............................................13

*Burgos v. Citibank, N.A.*,
  745 F. Supp. 3d 959 (N.D. Cal. 2024) .......................................................24

*Carrick v. Peloton Interactive, Inc.*,
  2023 WL 8851628 (N.D. Cal. Dec. 21, 2023) ...........................................8, 9

*Castillo v. Cava Mezze Grill, LLC*,
  2018 WL 7501263 (C.D. Cal. Dec. 21, 2018) .............................................25

*Charbonnet v. Omni Hotels & Resorts*,
  2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) .............................................17

- iii -

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013) ........................................................................21

*Chou v. Charles Schwab & Co.*,
   2022 WL 1127384 (N.D. Cal. Mar. 22, 2022)..............................................22

*City & Cnty. of S.F. v. Small Claims Ct.*,
   141 Cal. App. 3d 470 (1983) ........................................................................23

*Costantini v. Trans World Airlines*,
   681 F.2d 1199 (9th Cir. 1982) ......................................................................11

*Darnaa, LLC v. Google, Inc.*,
   2015 WL 7753406 (N.D. Cal. Dec. 2, 2015).........................................15, 21

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................................................19

*De La Cruz v. Target Corp.*,
   2018 WL 3817950 (S.D. Cal. Aug. 8, 2018) ...............................................10

*Ellis v. U.S. Sec. Assocs.*,
   224 Cal. App. 4th 1213 (2014) .....................................................................15

*Evanston Ins. Co. v. Roman Cath. Bishop of Orange*,
   759 F. Supp. 3d 1019 (C.D. Cal. 2024) .......................................................20

*Fefferman v. Dr Pepper Snapple Grp., Inc.*,
   2013 WL 12114486 (S.D. Cal. Mar. 12, 2013) ..................................8, 9, 10

*Flores-Mendez v. Zoosk, Inc.*,
   2022 WL 2967237 (N.D. Cal. July 27, 2022)...............................................22

*Han v. Mobil Oil Corp.*,
   73 F.3d 872 (9th Cir. 1995) ..........................................................................15

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) .........................................................7

*Hill v. Robert's Am. Gourmet Food, LLC*,
   2013 WL 3476801 (N.D. Cal. July 10, 2013)................................................8

*Hooper v. Jerry Ins. Agency, LLC*,
   675 F. Supp. 3d 1027 (N.D. Cal. 2023) .......................................................23

*In re Arris Cable Modem Consumer Litig.*,
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................16, 17

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
   298 F. Supp. 3d 1285 (N.D. Cal. 2018) .......................................................25

- iv -

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ................................................................9

*Jeong v. Nexo Cap. Inc.*,
    2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ..............................................7, 24, 25

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................................16

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) ........................................................................8, 9

*Lacour v. Marshalls of CA, LLC*,
    2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ..................................................7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ........................................................................................12

*Lipeles v. United Airlines, Inc.*,
    2024 WL 891792 (C.D. Cal. Jan. 9, 2024) ....................................................13

*Magill v. Wells Fargo Bank, N.A.*,
    2021 WL 6199649 (N.D. Cal. June 25, 2021) ................................................23

*Mehr v. Cap. One Bank USA N.A.*,
    2019 WL 2428768 (C.D. Cal. Jan. 4, 2019) ....................................................7

*Mendoza v. Amalgamated Transit Union Int'l*,
    30 F.4th 879 (9th Cir. 2022) ...........................................................................12

*Meza v. Coty, Inc.*,
    2023 WL 3082346 (N.D. Cal. Apr. 24, 2023) ................................................19

*Moreno v. Castlerock Farming & Transp., Inc.*,
    2013 WL 1326496 (E.D. Cal. Mar. 29, 2013) ................................................12

*Mpoyo v. Litton Electro-Optical Sys.*,
    430 F.3d 985 (9th Cir. 2005) ...........................................................................11

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) .........................................................................24

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ...........................................................................21

*Order of United Com. Travelers of Am. v. Wolfe*,
    331 U.S. 586 (1947) ........................................................................................15

*Ortiz v. Walmart, Inc.*,
    2020 WL 5835323 (C.D. Cal. Sept. 18, 2020) ................................................8

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .............................................................................9

*Padilla v. Willner*,
    2016 WL 860948 (N.D. Cal. Mar. 7, 2016).................................................8, 10

*Paracha v. Gen. Mills, Inc.*,
    2019 WL 13040495 (C.D. Cal. Jan. 7, 2019) ................................................8

*Person v. Google, Inc.*,
    2007 WL 832941 (N.D. Cal. Mar. 16, 2007)................................................19

*Phillips v. Apple Inc.*,
    2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ..........................................16, 17

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) .......................................................................21

*Ramirez v. Charter Commc'ns, Inc.*,
    16 Cal. 5th 478 (2024) ................................................................................20

*Roffman v. Perfect Bar, LLC*,
    2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ..............................................16

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) .......................................................17

*Rose v. Bank of Am., N.A.*,
    57 Cal. 4th 390 (2013) ................................................................................20

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..........................................................7

*Santich v. GNC Holdings, Inc.*,
    2017 WL 5614902 (S.D. Cal. Nov. 21, 2017) ...............................................8

*Soltani v. W. & S. Life Ins. Co.*,
    258 F.3d 1038 (9th Cir. 2001) .....................................................................15

*Song Fi, Inc. v. Google, Inc.*,
    2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ................................................19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .......................................................................20

*Suchite v. ABM Aviation, Inc.*,
    741 F. Supp. 3d 878 (S.D. Cal. 2024)..........................................................24

*Taylor v. Amazon.com Servs. LLC*,
    2025 WL 307469 (E.D. Cal. Jan. 27, 2025) .................................................12

- vi -

*Ting v. AT & T*,
  182 F. Supp. 2d 902 (N.D. Cal. 2002), *aff'd in part, rev'd in part*, 319 F.3d 1126 (9th Cir.
  2003) ...................................................................................................................................15

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) .............................................................................................15

*Torres v. Veros Credit LLC*,
  2023 WL 5505887 (C.D. Cal. July 13, 2023) ......................................................................24

*United States v. Adobe, Inc.*,
  791 F. Supp. 3d 966 (N.D. Cal. 2025) .................................................................................18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................................................17

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
  967 F. Supp. 2d 1289 (N.D. Cal. 2013) .............................................................................8, 9

*Watkins v. MGA Ent., Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) .................................................................................19

*Weizman v. Talkspace, Inc.*,
  705 F. Supp. 3d 984 (N.D. Cal. 2023) ...................................................................................7

**Statutes**

Cal. Civ. Code
  § 1750, *et seq.* .......................................................................................................................5
  § 1761(d) ..............................................................................................................................19

Cal. Bus. & Prof. Code
  § 17200, *et seq.* .....................................................................................................................5
  § 17600, *et seq.* .....................................................................................................................5

Cal. Civ. Proc. Code
  § 116.220(a)(5) .....................................................................................................................22
  § 116.710(a) ..........................................................................................................................22

**Other Authorities**

Fed. R. Civ. P.
  9(b) ..................................................................................................................................16, 17
  12(b)(1) .............................................................................................................................7, 14
  12(b)(6) .......................................................................................................................7, 13, 14
  12(f) ................................................................................................................................7, 24

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 19, 2026, at 1:00 p.m., or as soon thereafter as available, in the courtroom of the Honorable P. Casey Pitts, located at 280 South 1st Street, San Jose, California 95113, Defendant Adobe Inc. ("Adobe") will and hereby does move the Court for an order dismissing, or alternatively, staying Plaintiff's action because it is duplicative of the earlier-filed and pending *Wohlfiel et al. v. Adobe*, No. 5:25-cv-6562-NC (N.D. Cal. Aug. 4, 2025) action.

Adobe also moves to dismiss all claims under Rule 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure because: (1) Plaintiff failed to comply with the contractual pre-litigation dispute resolution requirements in the TOU; (2) Plaintiff's claims were asserted after the contractual limitations period had run; (3) Plaintiff does not sufficiently allege reliance under the heightened pleading standard for claims sounding in fraud; (4) Plaintiff's allegations that the "Annual, Billed Monthly" plan did not clearly disclose the annual commitment and monthly payments during such commitment are foreclosed as a matter of law; (5) Plaintiff does not allege that he is a "consumer" as required under the California Legal Remedies Act; (6) Plaintiff has not alleged the remedies available to him at law are inadequate or that he may suffer future harm; and (7) Plaintiff's claim for declaratory relief is not supported by a cognizable legal theory.

Finally, Adobe moves under Rule 12(f) to strike all class claims (or alternatively moves to dismiss them under Rule 12(b)(1) and/or 12(b)(6)) because the TOU include an enforceable class waiver.

This Motion is based on the Complaint; this Notice of Motion; Adobe's Memorandum of Points and Authorities; the concurrently filed Declaration of Joseph Farris, and any exhibits attached thereto; the papers on file; any Reply which Adobe may file in support of this Motion; and any evidence and argument presented to the Court.

Dated:  December 11, 2025

ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ Jeremy T. Kamras*

Douglas A. Winthrop

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeremy T. Kamras
Joseph Farris
Tommy Huynh
Nina Leviten
Mark E. Raftrey

*Counsel for Defendant Adobe Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Adobe makes its popular creative tools available online through customer-friendly subscription practices.  Adobe clearly and conspicuously discloses the Terms of Use that govern the contractual subscription agreement with each customer during the enrollment process before and after checkout, including providing numerous disclosures about the Early Termination Fee ("ETF") associated with its "Annual, Billed Monthly" plans.  Adobe also offers several easy-to-use cancellation options.  Despite Adobe's clear disclosures and customer-friendly enrollment and cancellation processes, Plaintiff alleges that he purchased an "Annual, Billed Monthly" subscription while "not fully aware" that he had expressly agreed to an annual commitment and to pay an ETF should he desire to cancel before the end of the annual term.  Complaint ("Compl.") ¶¶ 17, 161, 194.  Plaintiff appears to assert that his lack of awareness of the annual term and/or other practices related to the enrollment and cancellation processes gives rise to various causes of action.

As an initial matter, this putative class action is duplicative of an earlier-filed putative class action also pending in this District: *Wohlfiel et al. v. Adobe*, No. 5:25-cv-6562-NC.  The two complaints assert substantially the same allegations and claims, and seek to certify overlapping classes of Adobe customers who purchased Adobe subscription plans.  The complaints also suffer from many of the same infirmities, including their improper pleading of a class action despite the class action waiver in the Terms of Use, among other issues that have been fully briefed in Adobe's Motion to Dismiss and Motion to Strike in *Wohlfiel* and are now under submission.  Therefore, in lieu of deciding substantially similar issues here, the Court may dismiss this action or stay it under the first-to-file rule, the doctrine against claim-splitting, and/or its inherent authority.  If the Court declines to dismiss or stay this case on that basis, then it should dismiss the complaint for failure to state a claim or lack of standing (for substantially similar reasons as in *Wohlfiel*) and/or strike the class claims.

<u>First</u>, Plaintiff lacks standing because he did not comply with the dispute resolution requirements that are a condition precedent to his ability to bring claims against Adobe in any forum.  Specifically, Plaintiff was required to take several steps before resorting to litigation: contacting

Adobe Customer Care, providing a detailed and individualized Notice of Claim to enable Adobe to evaluate and address each claim, trying to resolve the dispute informally with Adobe, and then waiting a specified period before resorting to legal action, typically in small claims court or arbitration. These requirements are not a mere formality; they are intended to foster communication and a good faith effort to seek an efficient resolution *before* resorting to litigation. Plaintiff fails to adequately allege that he complied with these conditions (and indeed, he did not).

Second, Plaintiff fails to state a claim for multiple reasons. Foremost among them is that these claims are facially barred by the contractual limitations period. According to Plaintiff's own allegations, the latest event giving rise to a claim based on an ABM subscription was September 2023. But the TOU provides for a one-year limitations period—meaning that these claims were all untimely when this case was filed in October 2025. Plaintiff also fails to state a claim and/or the Court lacks subject matter jurisdiction for other reasons: (i) Plaintiff falls well short of sufficiently alleging reliance with specificity under the heightened pleading standard for claims sounding in fraud; (ii) his allegations that Adobe's disclosure regarding the "annual" nature of the "Annual, Billed Monthly" plan was misleading were recently rejected as a matter of law in another case in this District involving Adobe; (iii) he fails to allege that he is a "consumer" who has standing under California's Consumers Legal Remedies Act; (iv) he fails to allege the remedies available to him at law are inadequate or that he may suffer future harm, such that he may pursue injunctive or other equitable relief; and (v) he fails to allege a cognizable legal theory to state a declaratory relief claim.

Third, the TOU also include an enforceable class waiver. Therefore, at a minimum, even if the Complaint is not dismissed, the Court must strike or dismiss the class allegations based on a straightforward reading of the TOU and well-established precedent.

## II.    BACKGROUND

### A.    Adobe's Services And Its Subscription Model

Adobe provides services that power creative expression, such as applications like Creative Cloud and Lightroom, which Plaintiff alleges he purchased via subscriptions. Compl. ¶ 17. Adobe offers a flexible subscription model that caters to a variety of customer preferences.

Customers can opt for monthly or yearly subscriptions, and pay all-at-once, or as-they-go. Specifically:

- Monthly: The "Monthly" plan is a month-to-month contract, billed monthly, which customers can cancel any time, for no fee.

- Annual, Prepaid: The "Annual, Prepaid" plan is an annual contract, billed up front, which provides a discount compared to the "Monthly" plan.

- Annual, Billed Monthly: The "Annual, Billed Monthly" plan is a hybrid:  it is an annual contract that allows customers to pay in monthly installments, and which provides nearly the same discount as the "Annual, Prepaid" plan.  Though customers commit for one year, they can still cancel their subscription during the first year by paying a cancellation fee of half of the remaining monthly installments. After the first year, customers can cancel the "Annual, Billed Monthly" plan at any time without paying a fee, while retaining the discounted monthly price.

Customers can cancel their subscriptions online in about a minute, can contact live representatives on the phone to cancel, or can use web chat to cancel.  Adobe's customer base has rapidly expanded in recent years because of—not in spite of—the customer-friendly subscription options it provides.

## B.    Plaintiff's Purchases and Adobe's Terms Of Use

Plaintiff alleges that he purchased an "Annual, Billed Monthly" ("ABM") Creative Cloud subscription in April 2022, cancelled this subscription in September 2023, and paid an $84 cancellation fee.  Compl. ¶ 17.  Plaintiff also alleges that he later purchased a Lightroom subscription in July 2025 but this purchase was pursuant to an "Annual, Prepaid Plan" that does not carry the possibility of an ETF, and Plaintiff does not appear to assert any claim arising from his Lightroom subscription.

Customers agree to Adobe's Terms of Use ("TOU") as a condition of their use of Adobe's services.  As alleged in the Complaint, a hyperlink to the TOU was presented on the "checkout page" when Plaintiff made his purchases, below which he was asked to "Agree and subscribe." *Id.* ¶¶ 114, 121.  Plaintiff alleges multiple times that customers are aware they are entering an

agreement when they subscribe.  *Id.* ¶ 98 ("A consumer interested in a subscription is directed

through a set order of pages on the website to view subscriptions and prices, choose add-on

services, provide personal and billing information, and ultimately agree to the subscription.");

¶ 114 (consumers must enter their billing information to sign up); ¶¶ 127-28 (alleging that

consumers believe they are agreeing to a "flexible monthly plan").

    A copy of Adobe's TOU is attached to the Complaint as Exhibit A.  They include, as

relevant to this Motion: (1) a dispute resolution process before resorting to legal action, (2) a one-

year contractual limitations provision, and (3) a class action waiver.

    ***Dispute Resolution Provisions.***  Section 14.1 of the TOU is titled "Process," and states:

> If you have any concern or dispute that Adobe Customer Care is
> unable to resolve ("Claim"), you agree to first try to resolve the
> dispute informally and in good faith by contacting us and providing a
> written Notice of Claim to the address provided in section 18.2 (Notice
> to Adobe). The Notice of Claim must provide Adobe with fair notice
> of your identity, a description of the nature and basis of your Claim,
> and the relief you are seeking, including the specific amount of any
> monetary relief you are seeking, and cannot be combined with a
> Notice of Claim for other individuals. . . . Neither party shall initiate
> legal action until 30 days after the Notice of Claim is received.

Plaintiff alleges that he complied with the dispute resolution process when he sent a Notice of

Claim to Adobe on October 1, 2024; attempted to engage Adobe in informal resolution

discussions; and filed an arbitration demand with JAMS on May 23, 2025. Compl. ¶¶ 198, 201-04.

    ***Contractual Limitations Period.***  Section 14.1 of the TOU also states:  "Claims related to

the Terms, Services, or Software are permanently barred if not brought within one year of the

event resulting in the Claim."

    ***Class Action Waiver.***  Section 14.2 of the TOU is titled "No Class Actions," and states:

> **You may only resolve disputes with us on an individual basis, and
> you may not bring a claim as a plaintiff or a class member in a
> class, consolidated, or representative action. Nonetheless, if any
> portion of this class action waiver is deemed unenforceable or
> invalid as to a particular remedy, then that remedy (and only that
> remedy) must be severed from the arbitration and may be sought
> in court. The parties agree, however, that any adjudication of
> remedies not subject to arbitration shall be stayed pending the
> outcome of any arbitrable claims and remedies.**

### C.    Plaintiff's Complaint

Plaintiff filed his complaint on October 27, 2025.  This action appears generally to allege that Adobe's subscription enrollment process does not clearly and conspicuously disclose the material terms of its ABM subscription option and that the cancellation process is difficult. Compl. ¶¶ 96-171.  Plaintiff makes numerous allegations about the allegedly deceptive nature of the enrollment process, including that the "Adobe's advertising suggests a flexible monthly plan, while in reality these plans commit users to a full year with penalties for early cancellation."  *Id.* ¶ 128.  Regarding the cancellation process, Plaintiff alleges, among other things, that the early termination fee "is obscured within the depths of Adobe's website," and that Adobe "makes it difficult, if not impossible, for consumers to cancel their [ABM] subscriptions by requiring users to go through several steps to cancel a subscription, resulting in a burdensome and confusing process."  *Id.* ¶¶ 158, 167.

Plaintiff asserts four Counts: (I) Declaratory Judgment; (II) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (III) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and (IV) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, including as a result of allegedly violating California's Automatic Renewal Law ("CARL"), Cal. Bus. & Prof. Code § 17600, *et seq.*

### D.    The Duplicative *Wohlfiel* Action

This is a copycat complaint that closely mirrors another case filed nearly three months earlier, on August 4, 2025, in this District:  *Wohlfiel et al. v. Adobe*, No. 5:25-cv-6562-NC (N.D. Cal.).  Plaintiff's action names the same defendant, makes substantially similar allegations regarding Adobe's subscription and cancellation practices, asserts the same core causes of action (*i.e.*, violations of CLRA, FAL, UCL (including on the basis of CARL)), and seeks to represent an overlapping class of Adobe customers.  *Compare, e.g.*, *Wohlfiel* Compl. ¶ 1 (Dkt. 1) ("This action arises from Adobe's unlawful and deceptive practices related to its subscription services, which deploy misleading enrollment and automatic renewal schemes intended to induce consumers to unwittingly enroll in costly subscriptions."), *with* Compl. ¶ 5 ("Adobe uses deceptive practices,

fails to disclose material terms, and obscures and confuses consumers' understanding of its subscriptions in order to lock consumers into expensive, recurring payments that consumers are unable to cancel without substantial difficulty and significant penalties.").

Adobe's motion to dismiss and strike in *Wohlfiel*, which raises many of the same arguments as in this Motion, is fully briefed and awaiting a decision. *Wohlfiel* Dkt. 20.

## III.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether this action should be dismissed or stayed as duplicative of the *Wohlfiel* action under the first-to-file rule, the claim-splitting doctrine, or the Court's inherent authority.

2.    Whether Plaintiff's claims should be dismissed because he failed to comply with the contractual pre-litigation dispute resolution requirements in the TOU.

3.    Whether Plaintiff's claims should be dismissed because they were asserted after the contractual limitations period had run.

4.    Whether Plaintiff's claims should be dismissed because he does not sufficiently allege reliance under the heightened pleading standard for claims sounding in fraud.

5.    Whether Plaintiff's claims should be dismissed because he alleges that the ABM plan did not clearly disclose the annual commitment with monthly billing during such commitment.

6.    Whether Plaintiff's claims under the CLRA should be dismissed because he does not allege that he is a "consumer."

7.    Whether Plaintiff's claims for injunctive and other equitable relief should be dismissed because he has not alleged the remedies available to him at law are inadequate or that he may suffer future harm.

8.    Whether Plaintiff's claims for declaratory judgment should be dismissed because he does not sufficiently allege that the TOU are unconscionable, that the TOU do not contain a valid arbitration agreement, or that Adobe waived any right to arbitrate.

9.    Whether Plaintiff's class claims should be struck and/or dismissed because the TOU waive any right to bring a class action.

1

## IV.    LEGAL STANDARDS

2         "A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal

3  subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction will be

4  granted if the complaint on its face fails to allege facts sufficient to establish subject matter

5  jurisdiction. . . .  Once a party has moved to dismiss for lack of subject matter jurisdiction under

6  Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction."

7  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1138 (N.D. Cal. 2013).

8         To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient

9  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has

10 facial plausibility when the plaintiff pleads factual content that allows the court to draw the

11 reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

12 556 U.S. 662, 678 (2009) (citation omitted).  A plaintiff must provide "more than labels and

13 conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

14 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

15        Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any

16 redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to

17 strike are appropriate where "the complaint demonstrates that a class action cannot be maintained"

18 and "that under no set of circumstances could the claim or defense succeed."  *Sanders v. Apple*

19 *Inc.*, 672 F. Supp. 2d 978, 989-90 (N.D. Cal. 2009).  This includes when claims are foreclosed by

20 a class action waiver.  *See Jeong v. Nexo Cap. Inc.*, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22,

21 2022); *Lacour v. Marshalls of CA, LLC*, 2021 WL 1700204, at *6-7 (N.D. Cal. Apr. 29, 2021).

22 "Ultimately, 'whether to grant a motion to strike lies within the sound discretion of the district

23 court.'"  *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 988 (N.D. Cal. 2023) (citation

24 omitted).

25 ## V.    ARGUMENT

26    ### A.    This Action Should Be Dismissed As Duplicative Of The *Wohlfiel* Action Under
              The First-to-File Rule

27

28        The law disfavors copycat lawsuits because they serve no purpose.  *Barapind v. Reno*, 225

F.3d 1100, 1109 (9th Cir. 2000) (explaining that "the general principle is to avoid duplicative litigation" (cleaned up)).  The first-to-file rule provides a remedy for this situation, "allow[ing] courts to dismiss, stay, or transfer a case to another district court in order to avoid duplicative litigation."  *Mehr v. Cap. One Bank USA N.A.*, 2019 WL 2428768, at *2 (C.D. Cal. Jan. 4, 2019) (citing *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013)); *see also Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (explaining that "[t]he first-to-file rule is intended to serve the purpose of promoting efficiency well and should not be disregarded lightly" (cleaned up)).[1]  In determining whether to dismiss a lawsuit under the rule, courts analyze three factors:  "chronology of the lawsuits, similarity of the parties, and similarity of the issues."  *Kohn*, 787 F.3d at 1240.  All three factors point to dismissal here.

### 1.    The Chronology Of The Lawsuits Favors Dismissal

The chronology factor "simply requires that the case in question was filed later in time." *Santich v. GNC Holdings, Inc.*, 2017 WL 5614902, at *2 (S.D. Cal. Nov. 21, 2017) (cleaned up). Because this case was filed after *Wohlfiel*, the first factor is satisfied. *See, e.g.*, *Fefferman v. Dr Pepper Snapple Grp., Inc.*, 2013 WL 12114486, at *5 (S.D. Cal. Mar. 12, 2013) (dismissing second-filed action, which was filed one month after first-filed action).

### 2.    The Similarity Of The Parties Favors Dismissal

"In a class action context, the court determines the plaintiffs' similarities by comparing the putative classes."  *Alvarez v. Safelite Grp., Inc.*, 2022 WL 19569839, at *2 (C.D. Cal. Apr. 15, 2022).  Notably, "the substantial-similarity factor does not require identical class definitions; the putative classes must simply 'seek to represent at least some of the same individuals[.]'"  *Carrick v. Peloton Interactive, Inc.*, 2023 WL 8851628, at *4 (N.D. Cal. Dec. 21, 2023) (quoting *Hill v. Robert's Am. Gourmet Food, LLC*, 2013 WL 3476801, at *4 (N.D. Cal. July 10, 2013)); *see also*

---

[1] "[T]he first-to-file rule is not limited to cases brought in different districts."  *Wallerstein*, 967 F. Supp. 2d at 1294; *see, e.g.*, *Padilla v. Willner*, 2016 WL 860948, at *5-6 (N.D. Cal. Mar. 7, 2016) (applying the first-to-file doctrine to dismiss second-filed case in the same district); *Ortiz v. Walmart, Inc.*, 2020 WL 5835323, at *2-4 (C.D. Cal. Sept. 18, 2020) ("Courts have held that this rule still applies where overlapping actions are in the same district and before the same judge.").

1  *Paracha v. Gen. Mills, Inc.*, 2019 WL 13040495, at *2 (C.D. Cal. Jan. 7, 2019) (finding

2  substantial overlap where one action sought to represent a nationwide class of consumers that

3  purchased Cheerios and Honey Nut Cheerios and another sought to represent a class of consumers

4  in 10 states that purchased Cheerios, Nature Valley granola and granola bars, and Lucky Charms,

5  because "both classes purport[ed] to represent individuals who purchased Cheerios").  "The rule is

6  satisfied if ***some*** [of] the parties in one matter are also in the other matter, regardless of whether

7  there are additional unmatched parties in one or both matters."  *Intersearch Worldwide, Ltd. v.*

8  *Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008) (emphasis added).

9        Here, the putative classes reflect substantial overlap.  Notwithstanding the class action

10  waiver, Plaintiff seeks to represent a class of "[a]ll natural persons in the United States who,

11  within the applicable statute of limitations . . . paid for [any] Adobe subscriptions."  Compl. ¶ 225.

12  The *Wohlfiel* plaintiffs seek to represent nominally narrower classes: all persons who either

13  incurred fees for cancelling an ABM subscription or paid the full year of an ABM subscription.

14  But those classes are subsets of the broad putative class here and "fall within the broad class

15  definition proposed in this action."  *Carrick*, 2023 WL 8851628, at *4.  That is enough to find

16  substantial similarity on the basis of the complaints as pled.  *See id.* (finding substantial similarity

17  of parties where putative class in second-filed action was broadly defined to include employees

18  who worked for the defendant anywhere in California, while the putative class in the first-filed

19  action was more narrowly defined to include only employees who worked at one of the

20  defendant's warehouses in California).  The second factor is accordingly satisfied.

21        **3.    The Similarity Of The Issues Favors Dismissal**

22        Finally, the issues in this case and *Wohlfiel* are undeniably similar, indeed mostly the exact

23  same. The similarity-of-issues inquiry examines whether there is "substantial overlap between the

24  two suits," *Kohn*, 787 F.3d at 1241 (cleaned up), which includes whether the cases involve the

25  same "central questions."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

26  Where "the similarity in allegations would require the court to make similar determinations in

27  both cases, the issues are substantially similar enough for the first-to-file rule to apply."

28  *Fefferman*, 2013 WL 12114486, at *5 (cleaned up) (finding that the issues were substantially

1   similar in false advertising case where both cases challenged the same products and

2   representations); *see also Wallerstein*, 967 F. Supp. 2d at 1297 ("the thrust of the lawsuits is

3   identical" because both cases alleged that the same products were deceptively labeled as "All

4   Natural" where they contained the same synthetic ingredients, and alleged that consumers were

5   misled into purchasing the products).

6       Here, this action and *Wohlfiel* involve substantially similar factual allegations regarding

7   Adobe's enrollment process, disclosures about the ETF, and cancellation process.[2]  And the

8   "thrust of the lawsuits is identical," with both cases alleging the same misleading representations

9   and CARL violations.  This Court would have to make identical—not just similar—

10   determinations as the *Wohlfiel* court.  Because there is "substantial overlap" of issues between the

11   actions, the third factor is satisfied.[3]

12       In cases where all three factors are satisfied like here, courts within the Ninth Circuit

13   routinely dismiss duplicative putative class actions under the first-to-file rule.  *See, e.g.*, *Alvarez*,

14   2022 WL 19569839, at *3 (dismissing duplicative later-filed action); *De La Cruz v. Target Corp.*,

15   2018 WL 3817950, at *2 (S.D. Cal. Aug. 8, 2018) (same); *Padilla*, 2016 WL 860948, at *5

16   (same); *Fefferman*, 2013 WL 12114486, at *6 (same).  The same result is warranted here.

---

2 *Compare, e.g.*, *Wohlfiel* Compl. ¶ 54 ("Nowhere on the Subscription Selection page does Adobe provide information as to the amount of the early termination fee, how it is calculated, or its relationship to the total price of the subscription."), ¶ 56 ("There is also no clear statement on the Subscription Selection page that the subscription entails a year-long commitment), ¶ 77 ("Adobe fails to provide simple, accessible ways to cancel, and instead purposefully designed its cancellation process to be confusing and frustrating to customers . . . ."), *with* Compl. ¶ 119 ("[The] information does not describe the termination fees or that the consumer is locked in for at least one year."), ¶ 167 ("Adobe . . . makes it difficult, if not impossible, for a consumers to cancel their APM subscriptions by requiring users to go through several steps to cancel a subscription, resulting in a burdensome and confusing process.").

3 Plaintiff asserts a declaratory judgment claim that is not asserted in *Wohlfiel*, but this has no impact on the similarity of the issues factor because it "does not require total uniformity of the claims but rather focuses on the underlying issues and factual allegations."  *Alvarez*, 2022 WL 19569839, at *2; *see also Bazrganian v. Mercedes-Benz USA, LLC*, 2017 WL 4990517, at *3 (C.D. Cal. Oct. 31, 2017) ("[w]hile [plaintiff] has asserted some claims that are not alleged in the First-Filed Action, the existence of these claims does not preclude" application of the first-to-file rule).

**B.    In The Alternative, The Court Should Stay This Duplicative Action Pending Resolution of The *Wohlfiel* Action**

If the Court is not inclined to dismiss this duplicative action, it should be stayed pending resolution of *Wohlfiel* under the doctrine against claim-splitting articulated in *Adams v. California Department of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007), and/or the Court's inherent authority to promote judicial economy.

**1.    A Stay Is Warranted Under The Doctrine Against Claim-Splitting**

"Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams*, 487 F.3d at 688.  Where such claim-splitting exists, the doctrine against claim-splitting gives courts the discretion to, among other things, stay the later-filed complaint. *Id.* at 692.  Courts examine two factors:  (1) "whether the causes of action and relief sought" are the same in both actions; and (2) whether "the parties or privies . . . are the same" in both actions. *Id.* at 689.  These two factors are effectively the same as the first-to-file rule's second and third factors, and as described below, are satisfied here for the same reasons.

First, the causes of action and relief sought are the same in this action and *Wohlfiel*.  "To ascertain whether successive causes of action are the same, [courts] use the transaction test." *Id.*  This test considers four criteria, not all of which have to be met:  "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).  The last criterion is the most important, and meeting it alone is sufficient to satisfy the doctrine's first factor. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985 (9th Cir. 2005) (finding "common nucleus criterion to be outcome determinative").

Beginning with the fourth and most important criterion, two actions involve the same nucleus of facts where the complaints are based on the same statements or actions. *See, e.g.*, *Anguiano-Tamayo v. Wal-Mart Assocs., Inc.*, 2019 WL 359417, at *5-7 (N.D. Cal. Jan. 29, 2019);

- 11 -

1    *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1127 (C.D. Cal. 2016). Because

2    the Complaint and the *Wohlfiel* complaint are both based on Adobe subscription disclosures and

3    cancellation practices, the fourth criterion is met. As to the first criterion, although it is not clear

4    that judgment in this action would "destroy or impair" any rights yet to be established in *Wohlfiel*,

5    "that factor is not dispositive." *Anguiano-Tamayo*, 2019 WL 359417, at *6. The second criterion

6    is met because this action and *Wohlfiel* present substantially similar allegations of Adobe's

7    enrollment and cancellation process; the only differences are in the named plaintiffs' specific

8    subscription history. Because both actions allege the same type of conduct by Adobe violate the

9    same statutes, the third criterion is also met. *See id.* (finding third criterion met where "plaintiffs

10   in both actions are entitled to the same relief"). For these reasons, the doctrine's first factor is

11   satisfied.

12        Second, this action and *Wohlfiel* will likely involve the same parties. "Determining

13   whether the parties or privies to the action are the same turns on whether a nonparty to a first

14   action 'was "adequately represented by someone with the same interests who was a party" to the

15   first suit.'" *Taylor v. Amazon.com Servs. LLC*, 2025 WL 307469, at *6 (E.D. Cal. Jan. 27, 2025)

16   (quoting *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887 (9th Cir. 2022)). For

17   class actions that have not yet been certified, "[t]he key question is whether they cover the same

18   potential class." *Moreno v. Castlerock Farming & Transp., Inc.*, 2013 WL 1326496, at *2 (E.D.

19   Cal. Mar. 29, 2013). As discussed above, the *Wohlfiel* putative classes are necessarily subsumed

20   by this action's putative class. Neither class is appropriate given the class action waivers. But as

21   plaintiffs have pleaded their complaints, the doctrine's second factor is satisfied.

22        Because both factors are satisfied, the Court should stay this action pending resolution of

23   *Wohlfiel* to avoid claim-splitting. *See, e.g.*, *Anguiano-Tamayo*, 2019 WL 359417, at *5-8 (staying

24   second-filed class action as duplicative where both actions challenged the same wage statements).

25        **2.    The Court Should Issue A Stay Pursuant To Its Inherent Authority**

26        If not dismissed, the Court should also stay this action pursuant to its "inherent power to

27   'control the disposition of the causes on its docket with economy of time and effort for itself, for

28   counsel, and for litigants.'" *Taylor*, 2025 WL 307469, at *6 (quoting *Landis v. N. Am. Co.*, 299

U.S. 248, 254 (1936)).  Allowing two materially identical lawsuits to proceed simultaneously wastes judicial and the parties' resources.  A stay would promote efficiency.

### C.    Plaintiff Failed To Fulfill The Conditions Precedent To Filing Suit Set Forth In The TOU's Dispute Resolution Provisions

Even if the Court were to decline to dismiss or stay this case for the reasons set forth above, it should grant Adobe's motion to dismiss or strike for other reasons, including that they are barred by Adobe's TOU.

Plaintiff filed his claims without following the dispute resolution provisions mandated by the TOU, which requires these claims to be dismissed.  "[W]hen a party fails to allege compliance with a contract term that creates a condition precedent to filing a lawsuit, dismissal is warranted" under Rule 12(b)(6).  *Lipeles v. United Airlines, Inc.*, 2024 WL 891792, at *3 (C.D. Cal. Jan. 9, 2024) (dismissing putative class claims for failure to comply with contract requirement to notify airline "of any dispute arising out of or related to transportation" and to allow the airline "a period of sixty (60) days [after the submission] to provide a substantive response and to try to resolve the dispute prior to filing any lawsuit"); *see also Brosnan v. Dry Cleaning Station Inc.*, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.").

Plaintiff failed to comply with any of these terms.  Plaintiff alleges in his Complaint that he sent a Notice of Claim to Adobe on October 1, 2024.  Compl. ¶ 198.  The steps in that process required Plaintiff to:

- Attempt to resolve his concerns through Adobe Customer Care;
- Try to resolve the dispute informally by contacting Adobe and providing an individual written Notice of Claim that includes notice of the claimant's identity, a description of the nature and basis of the claim, and relief they are seeking, including the specific amount of any monetary relief; and
- Refrain from initiating legal action until 30 days after the Notice of Claim is received before filing any resulting legal action in the appropriate forum which in most cases will be small claims court or binding arbitration.

1    Plaintiff does not allege that he contacted Customer Care.  *See* Compl. ¶ 198.  Further, as

2    Plaintiff admits, his Notice of Claim was sent by counsel as part of a set of notices sent on behalf

3    of Plaintiff and other individuals.  *Id.*  Although Plaintiff fails to address the notices, he has

4    incorporated them by reference by quoting and referring to them in his Complaint.  So that the

5    Court has the benefit of seeing the actual correspondence, Adobe has attached: (i) Plaintiff's

6    original purported "Notice of Claim" dated October 1, 2024, which was submitted in combination

7    with notices for 1,124 other persons purportedly represented by the same law firm (Declaration of

8    J. Farris, Ex. 1); (ii) Adobe's response dated October 31, 2024 (*id.*, Ex. 2); (iii) Plaintiff's Demand

9    for Arbitration dated May 23, 2025 (*id.*, Ex. 3); (iv) Adobe's letter to JAMS dated May 30, 2025,

10    which elected a small claims court forum (*id.*, Ex. 4); and (v) the letter from JAMS dated June 17,

11    2025, enforcing Adobe's election of small claims court (*id.*, Ex. 5).  As noted in the Adobe letter

12    in response to the arbitration demand, this notice-via-assembly line did not comply with the

13    Dispute Resolution Procedures for multiple reasons, including because the alleged Notice was

14    "combined" with other notices and did not describe each individual's claim.  *Id.*, Ex. 2.  Plaintiff

15    also refused to provide a new Notice with individualized information for Plaintiff, even after

16    Adobe responded multiple times.  For example, while Plaintiff alleges that he bought Creative

17    Cloud and Lightroom products and provides dates of allegedly relevant purchases and

18    cancellations, he provided none of that information via the Dispute Resolution Procedures.

19    Therefore, Plaintiff's claims should be dismissed for failure to allege that he satisfied the TOU's

20    conditions precedent to any legal action.

21    **D.    Plaintiff's Claims Fail as a Matter of Law**

22    The Complaint should also be dismissed under Rule 12(b)(1) and/or Rule 12(b)(6) because

23    Plaintiff lacks standing and/or fails to state a claim for other reasons.

24    **1.    Plaintiff's Claims Are Barred By The 1-Year Contractual Limitations
25    Period**

26    First, as a straightforward matter of contract interpretation, Plaintiff's claims are barred by

27    the contractual limitations period.  The TOU provides:  "Claims related to the Terms, Services, or

28    Software are permanently barred if not brought within ***one year*** of the event resulting in the

1   Claim." TOU § 14.1 (emphasis added).  As demonstrated below, according to Plaintiff's

2   allegations, the last date on which any event occurred that might give rise to a claim was

3   September 2023 when he was charged an ETF, more than a year before he filed his complaint.

4       "California permits contracting parties to agree upon a shorter limitations period for

5   bringing an action than that prescribed by statute, so long as the time allowed is reasonable." *Han*

6   *v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995); *see also Order of United Com. Travelers of*

7   *Am. v. Wolfe*, 331 U.S. 586, 608 (1947) ("In the absence of a controlling statute to the contrary, a

8   provision in a contract may validly limit, between the parties, the time for bringing an action on

9   such contract to a period less than that prescribed in the general statute of limitations, provided

10  that the shorter period itself shall be a reasonable period."); *Ellis v. U.S. Sec. Assocs.*, 224 Cal.

11  App. 4th 1213, 1222–23 (2014) ("Parties may agree to shorten the limitations period" so long as

12  the limitation is "reasonable.").

13      Accordingly, "[m]any California cases have upheld contractual shortening of statutes of

14  limitations in different types of contracts." *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042

15  (9th Cir. 2001) ("Case law heavily favors affirming on this issue.").  Courts have routinely

16  concluded that limitations periods of one year or less, including as short as three months, are

17  reasonable and therefore enforceable.  *Id.* at 1043-44 ("[T]he weight of California case law

18  strongly indicates that [a] six-month limitation provision [for claims of wrongful termination and

19  unfair business practices] is not substantively unconscionable") (collecting cases).  This includes a

20  shortening of the limitations period in consumer actions.  *E.g.*, *Tompkins v. 23andMe, Inc.*, 840

21  F.3d 1016, 1031-33 (9th Cir. 2016) (holding one-year statute of limitations period in terms of

22  service for claims of unfair business practices, breach of warranty, and misrepresentations was not

23  unconscionable); *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *3 (N.D. Cal. Dec. 2, 2015)

24  (holding one-year statute of limitations period in terms of service was not unconscionable); *Ting v.*

25  *AT & T*, 182 F. Supp. 2d 902, 933 (N.D. Cal. 2002) (holding a two-year limitations period was not

26

27

28

1    substantively unconscionable as applied to common law claims), *aff'd in part, rev'd in part*, 319

2    F.3d 1126 (9th Cir. 2003).[4]

3        Here, the allegations make clear that the claims are time-barred.  Plaintiff alleges that he

4    purchased his Creative Cloud ABM subscription in April 2022 and cancelled the subscription in

5    September 2023.  Compl. ¶ 17.  Plaintiff's complaint was filed in October 2025, and therefore not

6    "within one year of the event[s] resulting in the Claim[s]."  *See* TOU § 14.1.  The claims are thus

7    "permanently barred."  *Id.*  All of Plaintiff's claims must therefore be dismissed as untimely.

8            **2.    Plaintiff Fails To Allege Reliance On Fraudulent Statements Sufficiently**

9        Plaintiff has not alleged actual reliance on *any* specific statement or omission made by

10   Adobe.  While he broadly alleges that many statements or disclosures are deceptive, he fails to

11   explain what specifically misled him.

12       Because Plaintiff alleges a deceptive scheme sounding in fraud, his claims must be pled

13   with factual specificity as required by Rule 9(b).  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d

14   1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading

15   standards apply to claims for violations of the CLRA and UCL." (citation omitted)).  Further, "a

16   plaintiff must allege actual reliance in order to have standing to pursue" UCL, FAL, and CLRA

17   claims.  *Roffman v. Perfect Bar, LLC*, 2022 WL 4021714, at *5 (N.D. Cal. Sept. 2, 2022).  Absent

18   a specific allegations of reliance, these claims (and others sounding in fraud) must be dismissed.

19   *Phillips v. Apple Inc.*, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (dismissing claims

20   where "Plaintiffs do not allege that they saw or heard any statements, advertising, terms of use, or

21   other representations by Apple before" downloading the software); *In re Arris Cable Modem

22   Consumer Litig.*, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (dismissing UCL, CLRA, and

23   FAL claims because the plaintiffs failed to allege actual reliance where they had "identif[ied] a

24   range of statements . . . that [they] allege are misleading" and "generally allege[d] that they relied

25   _____

26   [4] Count II, asserting a violation of the CLRA, is the one claim that is arguably differently situated.
     "Section 1751 of the CLRA renders 'unenforceable and void' any waiver by a consumer of the
27   statutory rights provided for under the CLRA, and sections 1781(a) and 1783 permit consumers to
     bring class actions within a three-year limitations period."  *Ting*, 319 F.3d at 1147 (citations
28   omitted).  The Ninth Circuit has held, however, that Section 1751 is preempted by the Federal
     Arbitration Act.  *Id.*

on [defendant's] misrepresentations and omissions in purchasing the [product]," but the plaintiffs never "specified which statements any of them saw or relied on in deciding to buy the [product]"); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016) (dismissing the CLRA and UCL claims where the plaintiff had "not even alleged what representations she encountered, let alone that she relied upon them," and "even assuming she encountered one of the [example] prompts identified in the [complaint], she has not alleged that the omission of the challenged information in any way impacted her behavior").

All of Plaintiff's claims fall far short of meeting that heightened pleading standard, which require pleading "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see* Fed. R. Civ. P. 9(b). In fact, in the nearly 60 page Complaint, Plaintiff alleges ***in only a single paragraph*** that he "relied" on anything—and that is a conclusory allegation concerning his reliance on "misrepresentations and omissions." Compl. ¶ 271. Plaintiff is silent on his *personal* experiences with Adobe's enrollment process and cancellation processes, alleging only that he somehow wound up being "not fully aware" of the automatic renewal programs and the ETFs after going through that process, and that he "encounter[ed] many obstacles" in cancelling his subscription. *Id.* ¶¶ 161, 194, 196. But there is no allegation that Plaintiff specifically saw any alleged misstatements before he purchased his subscriptions, let alone about *which* one(s) he relied on.

At most, the Complaint vaguely alleges that Plaintiff and putative class members "reasonably relied" on some representations and omissions in the subscription registration process (*id.* ¶ 271)—but those are precisely the types of "conclusory" and "general[]" allegations that courts routinely deem too thin to confer statutory standing. *See, e.g.*, *Phillips*, 2016 WL 1579693, at *8; *In re Arris*, 2018 WL 288085, at *7; *Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828, at *5 (S.D. Cal. Dec. 16, 2020) (finding "conclusory allegations" insufficient to plead "facts establishing that [the plaintiff] actually relied on [the defendant's] alleged 'omission'"). In sum, because Plaintiff fails to allege actual reliance with the requisite degree of specificity, he cannot establish statutory standing to pursue his UCL, CLRA, and FAL claims.

1

2

### 3.    Plaintiff's Claims Alleging That The "Annual, Billed Monthly" Plan Is Misleading Fail To State A Claim As A Matter Of Law

3

The Court should also dismiss Plaintiff's claims to the extent they are predicated on

4

allegations that Adobe does not disclose that the ABM plan requires an annual commitment with

5

monthly billing.  Another court in this District has already held that, in this regard, the ABM plan

6

is not deceptive.  In *United States v. Adobe, Inc.*, the Department of Justice sued Adobe for

7

allegedly failing to "adequately disclose to consumers that by signing up for the 'Annual, Paid

8

Monthly' subscription plan . . . , they are agreeing to a year-long commitment."  No. 5:24-cv-

9

03630-NW (N.D. Cal. July 23, 2024) (Wise, J.) (Dkt. 40).  In its order on Adobe's motion to

10

dismiss, that court held that the annual term commitment of the ABM plan was not misleading to a

11

reasonable consumer as a matter of law:

12

13

14

15

16

> As to the plan term or duration, the Court finds that Adobe clearly and conspicuously disclosed that its APM plan is an annual or yearly plan. A reasonable consumer would not be misled by this disclosure…. The plan name is unavoidable and uses diction and syntax understandable to ordinary consumers: 'Annual, paid monthly.' Thus, here, the Court finds that no reasonable consumer would believe based on the title and context of the plan that its term was more or less than one year.

17

*United States v. Adobe, Inc.*, 791 F. Supp. 3d 966, 984-85 (N.D. Cal. 2025) (citation omitted).[5]

18

That ruling forecloses what appears to be the core premise of Plaintiff's claims.  Plaintiff

19

asserts that customers are misled into believing they are signing up for a "flexible monthly plan,

20

while in reality these plans commit users to a full year."  Compl. ¶ 128; *see generally id.* ¶¶ 127-

21

35.  Plaintiff's statutory claims repeat these allegations.  *See id.* ¶ 261 (Count II, under

22

California's CLRA, alleging that Adobe did not disclose "the true terms" of the subscriptions); *id.*

23

¶ 270 (Count III, under California's FAL, alleging that Adobe "failed to disclose key terms of the

24

subscriptions," including "the contract length"); *id.* ¶¶ 279, 281 (Count IV, under California's

25

UCL, alleging that Adobe "falsely advertised the price and terms of the subscriptions and unfairly

26

and fraudulently failed to disclose the terms of the subscriptions," including the "annual

27

28

---

[5] The plan has been sometimes designated as "Annual, billed monthly" and sometimes "Annual, paid monthly."  The meaning is the same.

agreement"). The court in the DOJ matter, however, expressly found that Adobe's disclosure of the annual commitment was not misleading.

Therefore, each of Plaintiff's statutory claims is predicated in part on a claim already rejected in this District—that it was not clear that the "Annual, Billed Monthly" plan required an annual commitment and monthly billing. To that extent, the claims are foreclosed.

### 4. Plaintiff Does Not Allege He Is A Consumer As Required Under The CLRA

Separately, Plaintiff fails to state a claim under the CLRA because he has not alleged facts demonstrating that he is a "consumer" within the meaning of the statute. The CLRA defines a "[c]onsumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services *for personal, family, or household purposes*." Cal. Civ. Code § 1761(d) (emphasis added). If an individual makes purchases for business purposes, he lacks standing under the CLRA. *Song Fi, Inc. v. Google, Inc.*, 2016 WL 1298999, at *11 (N.D. Cal. Apr. 4, 2016) (granting motion to dismiss CLRA claim for lack of standing where the plaintiff alleged that it that used YouTube "for commercial purposes"); *Person v. Google, Inc.*, 2007 WL 832941, at *7 (N.D. Cal. Mar. 16, 2007) (granting motion to dismiss CLRA claim for lack of standing because the plaintiff's stated purpose for using Google's AdWords computer program was commercial and political).

Here, Plaintiff does not allege any facts to establish what his purpose was in subscribing to Adobe products, and therefore he fails to establish standing.

### 5. Plaintiff Fails To Allege Any Entitlement To Injunctive And Other Equitable Relief

Plaintiff fails to allege facts establishing the inadequacy of a remedy at law or a risk of future harm absent injunctive relief, such that he may pursue claims for injunctive relief. *See, e.g.*, *Meza v. Coty, Inc.*, 2023 WL 3082346, at *3 (N.D. Cal. Apr. 24, 2023) (granting motion to dismiss claims for injunctive relief in consumer class action where the plaintiff "failed to allege that she faces a threat of future harm from Defendant's labeling") (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 837-38 (N.D. Cal. 2021) (granting motion to dismiss claims for injunctive relief in consumer class

action where the plaintiffs had "not alleged any facts establishing that their remedies at law are inadequate . . . [or] any facts establishing that they are likely to face any future danger") (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).  Here, Plaintiff makes only bare allegations that he seeks injunctive relief because Adobe's practice are "ongoing."  Compl. ¶¶ 262, 289, 290.  Such conclusory pleading plainly fails to establish standing to seek injunctive relief.  Nor does Plaintiff allege that he will purchase the products again, or that he would likely purchase them again if not for Adobe's alleged misrepresentations.  Such relief should therefore be dismissed from Plaintiff's claims under the CLRA (Count II; *see id.* ¶ 262), the FAL (Count III; *see id.* ¶ 275) and the UCL (Count IV; *see id.* ¶ 289).

For the same reasons, Plaintiff also may not pursue other equitable relief, including restitution and disgorgement.  *Sonner*, 971 F.3d at 844 (affirming dismissal of claims and explaining that plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA") (citing cases).  As a result, there is no further cognizable relief available for Plaintiff's claim under the UCL (Count IV; *see Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 399 (2013) ("Private plaintiffs suing under the UCL may seek only injunctive and restitutionary relief . . . .")).  And the further prayers for such relief should also be dismissed from Plaintiff's claims under the CLRA (Count II; *see* Compl. ¶ 265) and the FAL (Count III; *see id.* ¶ 275).

### 6.    Plaintiff Fails to Allege Entitlement to Declaratory Relief

Plaintiff's claim for declaratory judgment fails because he does not allege a cognizable underlying legal theory.  *See Evanston Ins. Co. v. Roman Cath. Bishop of Orange*, 759 F. Supp. 3d 1019, 1026-27 (C.D. Cal. 2024).

<u>First</u>, Plaintiff fails to adequately allege that the Small Claims Provision is procedurally and substantively unconscionable.  "Both procedural and substantive elements must be present to conclude a term is unconscionable."  *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 493 (2024).  "Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power."  *Id.* at 492 (quotation marks omitted). "Substantive unconscionability addresses the fairness of the term in

1  dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (quotation marks omitted).

2  "The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on

3  the disadvantaged party.  Thus, mutuality is the 'paramount' consideration when assessing

4  substantive unconscionability." *Id.* (citation omitted).  "A contract is substantively unconscionable

5  when it is unjustifiably one-sided to such an extent that it shocks the conscience."  *Chavarria v.*

6  *Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013) (quotation marks omitted).

7          Plaintiff seems to assert procedural unconscionability by alleging that the TOU are

8  obfuscated because they are not "presented to or acknowledged by consumers during the

9  Subscription Flow" and that the TOU were an adhesion contract because Adobe "required each of

10  its customers . . . to agree to its non-negotiable Terms of Use" in order to sign up for its

11  subscriptions.  Compl. ¶¶ 179-80.  Plaintiff's obfuscation argument mirrors the one expressly

12  rejected by the court in *Singh v. Adobe Inc.  See* --- F. Supp. 3d ----, 2025 WL 2197142, at *7

13  (N.D. Cal. Aug. 1, 2025).  The *Singh* court held that a "reasonable user would have seen the

14  advisal and been able to locate the Terms of Use via the hyperlink" because: (1) "the advisal

15  regarding acceptance of the [TOU] is conspicuously displayed directly above the action button

16  that a user must accept before subscribing"; (2) "the text directly above the 'Agree and subscribe'

17  button is bolded and states 'By clicking "Agree and subscribe," . . . you also agree to the [TOU]'

18  . . . which 'clearly denotes "that continued use will act as a manifestation of the user's intent to be

19  bound"'"; and (3) "the [TOU] hyperlink is conspicuously distinguished from the surrounding text

20  in bright blue font, making its presence readily apparent." *Id.* at *4 (cleaned up) (citing *Oberstein*

21  *v. Live Nation Ent., Inc*., 60 F.4th 505, 516 (9th Cir. 2023)).  The same reasoning and conclusion

22  apply here.  *See* Compl. ¶¶ 114, 116, 118, 126 (portion of enrollment flow showing TOU

23  hyperlink in blue font and directly above the "Agree and subscribe" button).

24          And even if the TOU were an adhesion contract, because Plaintiff had meaningful

25  alternative choices other than doing business with Adobe, "the level of procedural

26  unconscionability" would be only "slight."  *Darnaa*, 2015 WL 7753406, at *2 (finding only a

27

28

"marginal" degree of procedural unconscionability in YouTube terms even though YouTube was the "dominant" video-sharing website).[6]

Turning to substantive unconscionability, Plaintiff takes issue with three purported limitations of small claims courts:  the lack of counsel, discovery, and appellate rights for a plaintiff who loses in small claims court.[7]  Compl. ¶ 217.  However, all these limitations apply equally to Plaintiff and Adobe.  Neither side can have counsel or conduct discovery, and if Adobe were the plaintiff in smalls claim court, it too would not have the right to appeal.  *See* Cal. Civ. Proc. Code § 116.710(a) ("The plaintiff in a small claims action shall have no right to appeal the judgment on the plaintiff's claim . . . .").  None of the limitations Plaintiff complains of are one-sided.

Plaintiff argues otherwise by speculating that Adobe will likely be represented by a "sophisticated corporate representative" and "all the relevant information and documents are already in Adobe's possession."  Compl. ¶ 218.  However, Plaintiff cites no authority that speculation about the parties' relative levels of sophistication renders the small claims provision unconscionable.  Nor is it true that all relevant information is in Adobe's possession.  Plaintiff's own Complaint belies that assertion; he too possesses what he alleges are the relevant subscription enrollment and cancellation flows, as well as his own subscription and cancellation history.  *See id.* ¶¶ 97-126 (describing subscription enrollment flows), ¶¶ 168-69 (describing cancellation flows), ¶¶ 194-97 (describing Plaintiff's subscription and cancellation experience).

---

[6] *See also, e.g.*, *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 881 (N.D. Cal. 2023) (finding only "a minimal degree of procedural unconscionability arising from the adhesive nature of the [contract]" where "nothing in the record suggests that Coinbase was [p]laintiffs' only option for cryptocurrency services"); *Flores-Mendez v. Zoosk, Inc.*, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022) (no "adequate showing of procedural unconscionability" where plaintiff "had meaningful market alternatives to Zoosk" and could have "simply opt[ed] out of [Zoosk's] dating service"); *Chou v. Charles Schwab & Co.*, 2022 WL 1127384, at *6 (N.D. Cal. Mar. 22, 2022) ("The Agreement has only slight procedural unconscionability because the plaintiffs had a choice concerning which brokerage service to use.").

[7] Plaintiff also argues that a small claims court lacks the jurisdiction to award injunctive relief. Compl. ¶ 221.  This is incorrect; small claims courts may award an injunction or other equitable relief "when a statute expressly authorizes a small claims court to award that relief."  Cal. Civ. Proc. Code § 116.220(a)(5).  Further, as discussed in Section E.5 above, Plaintiff is not entitled to injunctive relief, thereby making this argument irrelevant to the unconscionability inquiry.

1    At bottom, under Plaintiff's flawed logic, any agreement to bring disputes in small claims

2 court between an individual consumer and a corporation would be unconscionable.  But this

3 makes no sense and would undermine the intent of the California Legislature, which created the

4 small claims court system "to provide an inexpensive and expeditious means to settle disputes

5 over *small amounts*," where "ordinary litigation fails to bring practical justice . . . because the *time*

6 *and expense required by the ordinary litigation process is so disproportionate to the amount*

7 *involved* that it discourages legal resolution of the dispute."  *City & Cnty. of S.F. v. Small Claims*

8 *Ct.*, 141 Cal. App. 3d 470, 474 (1983) (emphasis in original; quotation marks omitted).  While

9 Plaintiff attempts to disparage small claims court as a second-class system, California courts have

10 emphasized that the small claims court system "has been refined over hundreds of years with

11 recurring attention from the courts, legal commentators, and the Legislature" and "is

12 constitutionally sound and indispensable to our system of justice." *City & Cnty. of S.F.*, 141 Cal.

13 App. 3d at 475.  Small claims courts are entitled to equal dignity for the claims they have

14 jurisdiction to hear.

15    Second, the TOU contain a valid arbitration agreement.  Plaintiff alleges that the TOU

16 allow Adobe "to avoid any arbitration from occurring because of the small claims election," and

17 thus that the TOU's terms "do not contemplate 'arbitration' within the meaning of the Federal

18 Arbitration Act."  Compl. ¶ 214.  The TOU, however, expressly contemplate arbitration, including

19 in any situation in which small claims courts lack jurisdiction or neither party elects to proceed in

20 small claims court.  TOU § 14.1.  Courts in this district have found arbitration clauses with similar

21 carveouts for small claims courts enforceable and compelled arbitration.  *See, e.g.*, *Hooper v.*

22 *Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1032, 1038-40 (N.D. Cal. 2023); *Magill v. Wells*

23 *Fargo Bank, N.A.*, 2021 WL 6199649, at *2-7 (N.D. Cal. June 25, 2021).

24    Third, Adobe has not breached the TOU or waived its right to arbitrate by seeking to

25 resolve Plaintiff's claims in small claims court when Plaintiff earlier filed an arbitration demand.

26 Adobe properly exercised its TOU rights by electing to litigate Plaintiff's claims in small claims

27 court, given the amount in dispute.  *See* TOU § 14.1 (provision giving either Adobe or the plaintiff

28 the right to elect that an eligible case be heard in small claims court in lieu of arbitration).  If the

small claims court finds that it lacks jurisdiction, the TOU provide that the claims will return to arbitration. Plaintiff has not alleged that Adobe refused to return to arbitration after that occurred, nor has Plaintiff alleged that Adobe has stated that it would refuse arbitration if the Small Claims Provision were found unconscionable or a court ordered a return to arbitration. Thus, Plaintiff has not adequately alleged any breach or waiver by Adobe.

In any event, Adobe's TOU have included a delegation provision giving the arbitrator

> the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or formation of the Terms, including whether any dispute between us is subject to arbitration (i.e., the arbitrator will decide the arbitrability of any dispute) and whether all or any part of these Terms are void or voidable.

TOU § 14.1. This provision "clearly and unmistakably delegates the gateway question of arbitrability to the arbitrator," including Plaintiff's "unconscionability arguments." *See Singh*, 2025 WL 2197142, at *7. Thus, Plaintiff is restricted to challenging the unconscionability of the delegation provision itself, and he may not challenge the unconscionability of other terms of the TOU in this Court.

Because all of Plaintiff's theories underlying his requested declaratory relief fail, the claim should be dismissed.

### E.    Plaintiff Cannot Pursue Class Claims Because The TOU Include An Enforceable Class Waiver

Finally, the Court should strike Plaintiff's class claims under Rule 12(f) because he waived such claims when he signed up for Adobe's services. Section 14.2 of the TOU is titled "**No Class Actions**" and states: "You may only resolve disputes with us on an individual basis, and you may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action." TOU § 14.2.

Class action waivers like the one in Section 14.2 are regularly enforced in courts applying California law. *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2013); *Burgos v. Citibank, N.A.*, 745 F. Supp. 3d 959, 967 (N.D. Cal. 2024); *Suchite v. ABM Aviation, Inc.*, 741 F. Supp. 3d 878, 887-88 (S.D. Cal. 2024); *Torres v. Veros Credit LLC*, 2023 WL 5505887, at *5 (C.D. Cal. July 13, 2023); *Jeong*, 2022 WL 3590329, at *14-15; *Archer v. Carnival Corp.*, 2020

WL 6260003, at *7 (C.D. Cal. Oct. 20, 2020); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1303 (N.D. Cal. 2018); *Castillo v. Cava Mezze Grill, LLC*, 2018 WL 7501263, at *4 (C.D. Cal. Dec. 21, 2018).  In *Jeong*, for example, the court granted the defendant's motion to strike class claims in a consumer class action because the parties' agreement had a valid class action waiver.  The agreement stated, in part:

> You agree that any dispute resolution proceeding . . . shall be conducted only on an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding.  No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding.

*Jeong*, 2022 WL 3590329, at *4; s*ee also In re Samsung*, 298 F. Supp. 3d at 1303 (dismissing consumer class action claims because the agreement "included a clause waiving class treatment").

Here, Plaintiff brought ***all*** of his claims as putative class claims.  Compl. ¶¶ 1, 246, 254, 256, 262, 265, 267, 271, 275, 277, 288 ("Plaintiff Dustin Foret, on behalf of himself and all others similarly situated, brings this class action suit for damages and equitable relief against defendant Adobe Inc.").  Therefore, all of these class claims are foreclosed by the TOU's class action waiver, and they must be dismissed and/or struck.

## VI.    CONCLUSION

For the reasons stated above, Adobe respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, stay this action, and/or strike Plaintiff's class claims.


Dated: December 11, 2025                    ARNOLD & PORTER KAYE SCHOLER LLP

By:    */s/  Jeremy T. Kamras*

Douglas A. Winthrop
Jeremy T. Kamras
Joseph Farris
Tommy Huynh
Nina Leviten
Mark E. Raftrey

*Counsel for Defendant Adobe Inc.*