# Demand for Arbitration Form
Instructions for Submittal of Arbitration to JAMS

## INSTRUCTIONS

Please submit this form to your local JAMS Resolution Center. Once the below items are received, a JAMS professional will contact all parties to commence and coordinate the arbitration process, including the appointment of an arbitrator and scheduling a hearing date.

📞 **1-800-352-JAMS**
🖥 **www.jamsadr.com**

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS with the requested number of copies:

A. **Demand for Arbitration** *(2 copies)*

B. **Proof of service of the Demand on the appropriate party** *(2 copies)*

C. **Entire contract containing the arbitration clause** *(2 copies)*
   - To the extent there are any court orders or stipulations relevant to this arbitration demand, e.g. an order com-pelling arbitration, please also include two copies.

D. **Administrative Fees**
   - For two-party matters, the Filing Fee is $2,000. For matters involving three or more parties, the filing fee is $3,500. The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 13% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. JAMS also charges a $2,000 filing fee for counterclaims. For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses. For matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400. See JAMS Policy on Employment Arbitrations, Minimum Standards of Fairness. JAMS may apply its Employment Minimum Standards where an individual claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

   - A refund of $1000 will be issued if the matter is withdrawn within five days of filing. After five days, the filing fee is non-refundable.

**Once completed, please submit to your local JAMS Resolution Center.**
Resolution Center locations can be found on the JAMS website at: *http://www.jamsadr.com/locations/*.

<? >



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

Add more respondents on **page 6**.

| | |
|---|---|
| **RESPONDENT NAME** | Adobe Inc. |
| **ADDRESS** | 345 Park Avenue |
| **CITY** | San Jose |
| **STATE** | CA |
| **ZIP** | 95110 |
| **PHONE** | |
| **FAX** | |
| **EMAIL** | |

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| **REPRESENTATIVE/ATTORNEY** | Joseph Farris |
| **FIRM/COMPANY** | Arnold & Porter Kaye Scholer LLP |
| **ADDRESS** | 3 Embarcadero Center, 10th Floor |
| **CITY** | San Francisco |
| **STATE** | CA |
| **ZIP** | 94111 |
| **PHONE** | (415) 471-3453 |
| **FAX** | |
| **EMAIL** | joseph.farris@arnoldporter.com |

## FROM CLAIMANT

Add more claimants on **page 7**.

| | |
|---|---|
| **CLAIMANT NAME** | Dustin Foret |
| **ADDRESS** | 5229 Page Street |
| **CITY** | Marrero |
| **STATE** | Louisiana |
| **ZIP** | 70072 |
| **PHONE** | (332) 208-7337 |
| **FAX** | |
| **EMAIL** | awolinsky@bathaeedunne.com |

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| **REPRESENTATIVE/ATTORNEY** | Andrew Wolinsky |
| **FIRM/COMPANY** | Andrew Wolinsky |
| **ADDRESS** | 3420 Bristol Street, Suite 600 |
| **CITY** | Costa Mesa |
| **STATE** | CA |
| **ZIP** | 92626 |
| **PHONE** | (332) 208-7337 |
| **FAX** | |
| **EMAIL** | awolinsky@bathaeedunne.com |

# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐ If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

**CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION. A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.**

Please see the attached Exhibit A for a detailed statement of Claimant's claims.

**AMOUNT IN CONTROVERSY** (US DOLLARS)

# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. **Please cite location of arbitration provision and attach two copies of entire agreement.**

**ARBITRATION PROVISION LOCATION**

Claimant files in JAMS pursuant to Adobe's General Terms of Use, which prohibits resolution of customer claims through class action litigation and requires Adobe customers to pursue their claims via arbitration JAMS. See Adobe General Terms of Use § 14. Additionally, Claimant asks that the JAMS refrain from consolidating their claim with those of other parties, in accordance with the Adobe General Terms of Use.

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. **Send the original response and counter-claim to the claimant at the address stated above with two copies to JAMS.**

## REQUEST FOR HEARING

**REQUESTED LOCATION**  California

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

See: *Comprehensive Rule 16.1*

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

**SIGNATURE**  /s/ Andrew Wolinsky          **DATE**  May 23, 2025

**NAME (PRINT/TYPED)**  Andrew Wolinsky



# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

Completion of this section is <u>required for all consumer or employment claims</u>.

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION. For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

[X] **YES**, this **is** a CONSUMER ARBITRATION.

[ ] **NO**, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

NOTE: JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter. In addition, JAMS may treat a matter as a consumer matter and apply the Employment Minimum Standards where an individual claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

## EMPLOYMENT MATTERS
If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

[ ] Less than $100,000      [ ] $100,000 to $250,000      [ ] More than $250,000      [ ] Decline to State

## WAIVER OF ARBITRATION FEES
**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## RESPONDENT #2 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

**RESPONDENT NAME**

**ADDRESS**

**CITY**   **STATE**   **ZIP**

**PHONE**   **FAX**   **EMAIL**

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

**REPRESENTATIVE/ATTORNEY**

**FIRM/COMPANY**

**ADDRESS**

**CITY**   **STATE**   **ZIP**

**PHONE**   **FAX**   **EMAIL**

## RESPONDENT #3 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

**RESPONDENT NAME**

**ADDRESS**

**CITY**   **STATE**   **ZIP**

**PHONE**   **FAX**   **EMAIL**

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

**REPRESENTATIVE/ATTORNEY**

**FIRM/COMPANY**

**ADDRESS**

**CITY**   **STATE**   **ZIP**

**PHONE**   **FAX**   **EMAIL**



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## CLAIMANT #2

| | |
|---|---|
| CLAIMANT NAME | |
| ADDRESS | |
| CITY | |
| STATE | |
| ZIP | |
| PHONE | |
| FAX | |
| EMAIL | |

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | Matt Hartley |
| FIRM/COMPANY | Hartley Law PLLC |
| ADDRESS | 101 N. First Ave., Ste. 2325 |
| CITY | Phoenix |
| STATE | AZ |
| ZIP | 85003 |
| PHONE | 1-844-844-1444 |
| FAX | |
| EMAIL | matt.hartley@hartleylawusa.com |

## CLAIMANT #3

| | |
|---|---|
| CLAIMANT NAME | |
| ADDRESS | |
| CITY | |
| STATE | |
| ZIP | |
| PHONE | |
| FAX | |
| EMAIL | |

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| | |
|---|---|
| REPRESENTATIVE/ATTORNEY | Raphael Janove |
| FIRM/COMPANY | Janove PLLC |
| ADDRESS | 500 7th Ave., 8th Fl. |
| CITY | New York |
| STATE | NY |
| ZIP | 10018 |
| PHONE | (646) 347-3940 |
| FAX | |
| EMAIL | raphael@janove.law |

**Exhibit A**

1. Claimant seeks monetary and injunctive relief against Adobe Inc. ("Adobe") under several California consumer protection statutes, including the Automatic Renewal Law ("ARL"), Cal. Bus & Prof Code § 17602, California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

2. Claimant files in JAMS pursuant to Adobe's General Terms of Use, which prohibits resolution of customer claims through class action litigation and requires Adobe customers to pursue their claims via arbitration JAMS. *See* Adobe General Terms of Use § 14. Additionally, Claimant asks that the JAMS refrain from consolidating their claim with those of other parties, in accordance with the Adobe General Terms of Use.

3. This Arbitration seeks redress for injuries attributable to Adobe's unlawful automatic renewal programs in its paid subscription plan for Adobe products. Adobe, a global software company based out of San Jose, California, is the software developer responsible for numerous ubiquitous products including Adobe Acrobat Pro, Photoshop, Illustrator, Lightroom, InDesign, and the Adobe Creative Cloud—a subscription-based suite of over twenty creative software applications developed by Adobe.

4. Claimant Dustin Foret is one of millions of paid Adobe subscribers in the United States and has paid subscription fees to Adobe. In short, Adobe's subscription renewal policies violate California law (which governs Claimant's terms of service)—in particular, the Automatic Renewal Law, California Consumers Legal Remedies Act False Advertising Law, and Unfair Competition Law. Adobe's automatic renewal policies raise serious concerns, as they involve deceptive and unfair practices that can mislead users and raise barriers to cancelling subscriptions. Adobe's cancellation process lacks clear, upfront disclosures about renewal terms or cancellation fees. Additionally, Adobe

has intentionally implemented a complex process that requires users to navigate through multiple screens, engage with customer service representatives, and deal with unclear instructions when trying to cancel their paid subscriptions. Furthermore, Adobe's early termination fees for annual plans—often hidden in fine print—can be unexpectedly high, discouraging consumers from canceling and effectively trapping them in long-term commitments. Adobe's company's lack of transparent billing notifications further exacerbates the issue, as users may be unaware of upcoming charges until they appear on their statements. These practices violate California consumer protection laws designed to prevent unfair or deceptive business conduct.

5. Adobe uses fine print, optional text boxes, and an intricate web of hyperlinks to obscure essential terms of their subscription plans. Adobe's website prominently displays the APM plan's "monthly" cost during enrollment, but it hides the early termination fee, as well as the amount of that early termination fee, which is 50% of the remaining monthly payments when a consumer cancels in their first year. Adobe's early termination fee disclosures are buried on the company's website in small print or require hovering over small icons to find.

6. Adobe has long been aware of consumers' confusion about early termination fees. Yet, Adobe has continued its practice of pushing customers towards the APM plan while obscuring the early termination fee. This deceptive approach ensures that many consumers are unaware of the full financial commitments they are making.

7. Adobe uses early termination fees as a tool to discourage cancelling subscriptions. And further, Adobe uses cancellation processes designed to make cancellation difficult, in addition to being costly. When customers like Claimants seek to cancel their APM subscriptions, they encounter a burdensome process characterized by dropped calls, repeated transfers, and other impediments designed to deter cancellation. Adobe also requires users to go through several steps to cancel a subscription, often making the process more tedious than expected. Users attempting to cancel are

redirected through various pages and notifications that can confuse or frustrate the process of ending a subscription. And while Adobe purports to allow online cancellation of APM subscriptions, users often need to contact customer support to fully cancel a subscription. During that process, Adobe's customer support agents try to persuade them to stay or offer discounted rates, adding more friction to the cancellation process.

8. Adobe's conduct is unlawful and violates California law—which governs Adobe's General Terms of Use—including the Automatic Renewal Law ("ARL"), Cal. Bus & Prof Code § 17602, California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

9. **ARL.** Under the California Automatic Renewal Law ("ARL"), businesses are required to "clearly and conspicuously disclose" the terms of automatic renewal or continuous service offers before the consumer subscribes. Cal. Bus & Prof Code § 17602. Adobe's early termination fee, which amounts to 50 percent of the remaining monthly payments for cancellations within the first year, is not disclosed transparently. Instead, this critical information is obscured within the depths of Adobe's website, often requiring users to navigate through small print or hover over hidden icons to uncover the fee details. At no point during the subscription process did Adobe "clearly and conspicuously disclose" the early termination fee, or the one-year commitment entailed by the "annual paid monthly" plan, thereby violating the ARL.

10. **CLRA.** The CLRA protects consumers against "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Termination fees are material facts under the CLRA because "[i]n the context of the CLRA, a fact is 'material' if a reasonable consumer would deem it important in determining how to act in the transaction at issue." *See, e.g., Gutierrez v. Carmax*

*Auto Superstores California*, 19 Cal. App. 5th 1234, 1258 (2018). Adobe's conduct violates the CLRA through at least the following:

- **Misleading Advertising**: Adobe's marketing suggests a flexible monthly plan, while in reality, these plans commit users to a full year with penalties for early cancellation. The distinction between a "monthly" membership (which implies flexibility) and an "annual paid monthly" membership (a year-long contract) is not clear in Adobe's advertising and misleads consumers about the terms of their subscription.

- **Cancellation**: Adobe's membership model charges a fee for early cancellation of annual contracts, which is not adequately disclosed or is framed in a way that seems to contradict the flexibility implied by "paid monthly" memberships. Adobe also makes it difficult, if not impossible, for consumers to cancel their APM subscriptions by requiring users to go through several steps to cancel a subscription, resulting in a burdensome and confusing process. Adobe's cancellation process involves navigating through a maze of pages on the Adobe website, and even when users try to cancel their subscriptions online they often are required to contact Adobe via phone to fully cancel their subscriptions. During the telephonic process, users are subject to dropped calls, repeated transfers, attempts to persuade customers to retain their subscriptions, and other impediments designed to deter cancellation.

- **Disclosure Practices**: Adobe does not always clear or prominent disclosures about the fees associated with early termination, violating the CLRA's requirement for transparency in terms of service and cancellation.

11. It has been more than 30 days since Claimant provided Adobe notice pursuant to § 1772 of the CLRA, and Adobe has failed to rectify or agree to rectify the problems associated with its deceptive business practices and to give notice to all affected consumers.

12. **FAL.** Adobe unfairly and fraudulently failed to disclose termination fees to APM plan purchasers such as Claimants. "[T]he FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 318 (2022) (cleaned up). Consumers who are inadequately informed of APM termination fees are demonstrably likely to be confused. Adobe's conduct that violates the FAL includes:

- **Confusion Over "Monthly" Label**: Adobe markets its APM subscriptions with the phrase "paid monthly," which implies flexibility and a month-to-month commitment. However, the APM plan is actually a year-long contract, and users who attempt to cancel early are subject to

4

significant cancellation fees. This discrepancy between the advertised "monthly" nature and the actual long-term obligation is misleading, violating the FAL's prohibition on false or deceptive advertising.

- **Impression of Flexibility**: The "monthly payment" aspect of the plan gives consumers the impression that they can cancel at any time, which is not true. This misleads consumers into thinking they are signing up for a more flexible plan than they actually are could be seen as a deceptive practice under the FAL.

- **Buried and Incomplete Information and Failure to Clarify Early Termination Costs**: Adobe customers do not realize they are committing to a full year of payments because Adobe's cancellation penalties are not always prominently disclosed during the sign-up process. While the information may be included in the fine print or terms of service, the failure to clearly and conspicuously disclose key terms (such as cancellation fees, long-term commitment, and impediments to cancellation) are an omission of critical information, making the advertising deceptive under the FAL. In particular, the cost of early termination (usually 50% of the remaining balance) is not adequately highlighted when users sign up, leaving them surprised when they attempt to cancel. Deceptively minimizing these critical terms is false advertising.

- **Lack of Clear Auto-Renewal Warnings**: The automatic renewal of Adobe's APM subscriptions discussed above, coupled with a difficult or confusing cancellation process, further violates the FAL because users are not properly warned or given clear information about when and how the subscription renews. California law requires businesses to make auto-renewal terms transparent, and Adobe's failure to do so is false advertising.

- **Overall Deceptive Marketing**: Adobe's advertising causes consumers to believe they are signing up for a more flexible plan than what is actually offered, which is misleading and deceptive.

13.     **UCL.** The UCL prohibits "unlawful, unfair or fraudulent" conduct in connection with business activities. Cal. Bus. & Prof. Code § 17200. Adobe unfairly and fraudulently failed to disclose termination fees to APM plan purchasers such as Claimants. By doing so, Adobe engaged in deceptive acts, omissions, or concealments that it knew or should have known would induce reliance, which was material to Claimants' purchases. As to unfair business practices, Adobe's conduct includes:

- **Imposing Penalty Fees for Cancellation**: Adobe's APM subscription locks users into a year-long contract, and if a user cancels before the end of the term, they are charged a high early termination fee (often 50% of the remaining contract balance). This is an unfair business practice under the UCL because it penalizes consumers for attempting to leave a service they no longer want or need. The penalty is excessive and disproportionate, especially because it was not clearly disclosed when consumers signed up.

5

- **Disguised Long-Term Commitment**: By advertising the APM service as a "monthly" payment, Adobe may create the impression that consumers can cancel at any time. However, the fine print locks them into an annual agreement, with severe financial penalties for early termination. This imbalance between the consumer's reasonable expectations and the company's actions can be considered unfair under the UCL, as it creates hardship for consumers.

14. Adobe's conduct also violates the "unlawful" prong of the UCL through violations of the ARL, FAL, and CLRA discussed above, as the UCL makes the unlawful practice independently actionable. *See, e.g.*, *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 90 Cal. App. 5th 1193, 1220 (2023) ("By proscribing 'any unlawful' business practice, [Business and Professions Code] 'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable.").

15. Adobe's subscription cancellation policies are designed to consistently and uniformly disadvantages all of its users, regardless of their background, business size, or technical proficiency. Adobe's use of opaque contract terms, aggressive enforcement of early termination fees, and a confusing cancellation process that discourages users from exercising their right to discontinue service. As discussed above, these policies create a system where users are penalized for reevaluating their needs—and force users to continue paying for a product that they no longer want or, if customers are able to navigate the labyrinthian cancellation process, pay unexpected cancellation fees. The result is an Adobe-controlled ecosystem where customer dissatisfaction is baked into the business model, trust is eroded, and users are trapped in contracts they no longer want.