**BATHAEE DUNNE LLP**
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Bryce W. Talbot (*pro hac vice*)
btalbot@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Allison Watson (CA 328596)
awatson@bathaeedunne.com
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
Tel.: (213) 458-7075

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

**JANOVE PLLC**
Raphael Janove (CA 361193)
raphael@janove.law
500 7th Avenue, 8th Floor
New York, NY 10018
Tel.: (646) 347-3940

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| DUSTIN FORET, individually and on behalf of others similarly situated, et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>ADOBE INC.,<br><br>    Defendant. | Case No. 5:25-cv-09221-PCP<br><br>Hon. P. Casey Pitts<br><br>**PLAINTIFF'S OPPOSITION TO ADOBE'S MOTION TO DISMISS, STAY, AND/OR STRIKE**<br><br>Date: February 19, 2026<br>Time: 1:00 p.m.<br>Place: Courtroom 8 – 4th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ....................................................................................................................1

BACKGROUND .......................................................................................................................2

I.      ADOBE'S SUBSCRIPTION-BASED SOFTWARE MODEL,
        SUBSCRIPTION FLOW, AND CANCELLATION PROCESS ...........................2

II.     ADOBE'S DISPUTE RESOLUTION PROCESS ...................................................3

III.    PLAINTIFF FORET'S EXPERIENCE WITH ADOBE'S SERVICES ................3

IV.     FORET FOLLOWED ADOBE'S DISPUTE RESOLUTION PROCESS,
        AND ADOBE OPTED OUT OF ARBITRATION ..................................................4

ARGUMENT .............................................................................................................................5

I.      THE COURT SHOULD NOT DISMISS OR STAY THIS ACTION ...................5

        A.      The Discretionary First-To-File Rule is Inapplicable to this Case ..............5

        B.      The Claim-Splitting Doctrine is Inapplicable to this Case ........................6

II.     FORET SUBSTANTIALLY COMPLIED WITH THE NOTICE AND
        INFORMATION DISPUTE RESOLUTION REQUIREMENTS .........................7

III.    FORET HAS PLAUSIBLY AND TIMELY ALLEGED DECEPTIVE AND
        UNLAWFUL PRACTICES BY ADOBE ............................................................10

        A.      Adobe's Contractual Limitations Defense Relies on an
                Unconscionable Provision of its Terms of Use..........................................10

        B.      Foret has Pleaded His Fraud-Based Claims with Sufficient
                Particularity .............................................................................................14

        C.      Adobe Misapplies the Ruling in *United States v. Adobe* ...........................16

        D.      Foret Alleges that He is a "Consumer" for Purposes of the CLRA ...........17

        E.      Foret is Entitled to Seek Injunctive and Equitable Relief Against
                Adobe ......................................................................................................18

        F.      Foret is Entitled to Declaratory Relief ......................................................18

IV.     ADOBE'S RULE 23 ARGUMENTS ARE PREMATURE AND WITHOUT
        MERIT ..............................................................................................................20

A.      The Class Waiver Is Limited to Arbitration .............................................20

B.      If the Class Waiver is Applicable to Litigation in Court, it is
        Unenforceable Under California Law..........................................................21

C.      The Class Waiver Conflicts with the Rules Enabling Act........................22

D.      Striking Class Allegations at the Pleading Stage is Improper Where
        Enforceability and Unconscionability Are Disputed ................................25

CONCLUSION.................................................................................................................25

1

2

**TABLE OF AUTHORITIES**

**CASES**

3

*Adams v. California Department of Health Services*., 487 F.3d 684 (9th Cir. 2007)....................6

4

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991) ..........................6

5

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013)...................23

6

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000)...................12

7

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................22, 23, 24

8

*Berk v. Choy*, --- U.S. ---, No. 24-440 (Jan. 20, 2026) ....................................24

9

*Bowles v. Leprino Foods Co.*, 2020 WL 3256845 (E.D. Cal. June 16, 2020)................7

10

11

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 2008 WL 3876341
    (E.D. Cal. Aug. 20, 2008) ..........................................12

12

*Brown v. Dow Chemical. Co.*, 2019 WL 484211 (N.D. Cal. Feb. 7, 2019) ..........................13

13

*China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018)..........................................6

14

*Custom Communications, Inc. v. FTC*, 142 F.4th 1060 (8th Cir. 2025)...................17

15

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ..........................14, 15

16

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)..............................18

17

*DIRECTV, Inc. v. Imburgia*, 577 U.S. 47 (2015)..........................................22

18

19

*Discover Bank v. Superior Court of Los Angeles*, 113 P.3d 1100 (Cal. 2005)...........................22

20

*Dolores Press, Inc. v. Robinson*, 766 F. App'x 449 (9th Cir. 2019) ..........................6

21

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022)...................21

22

*Fisher v. DCH Temecula Imports LLC*, 187 Cal. App. 4th 601 (2010)..........................22

23

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) ..........................11, 12

24

*Gerber v. Twitter, Inc.*, 2024 WL 5173313 (N.D. Cal. Dec. 18, 2024)..........................11

25

*Hanna v. Plumer*, 380 U.S. 460 (1965) ..........................................23

26

*Harvey v. Katella Mobilehome Estates., L.P.*, 2003 WL 22436265
    (Cal. Ct. App. Oct. 28, 2003)..........................................13

27

28

*In re Juul Labs, Inc., Antitrust Litigation*, 555 F. Supp. 3d 932 (N.D. Cal. 2021)...................13

*In re Marriott International Customer Data Security Breach Litigation*, 345 F.R.D. 137
    (D. Md. 2023) ...................................................................................................23

*In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 734 F. Supp. 3d 934
    (N.D. Cal. 2024).............................................................................................25

*In re Wal-Mart Stores, Inc. Wage & Hour Litigation*, 505 F. Supp. 2d 609
    (N.D. Cal. 2007)..............................................................................................25

*International Brotherhood of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038
    (9th Cir. 2020).................................................................................................21

*Jewelers Mutual Insurance Co. v. ADT Security Services, Inc.*, 2008 WL 5383371
    (N.D. Cal. Dec. 22, 2008) ...............................................................................12

*Kilgore v. KeyBank, National Association*, 718 F.3d 1052 (9th Cir. 2013) .................................10

*Kohn Law Group, Inc. v. Auto Parts Manufacturing Mississippi, Inc.*, 787 F.3d 1237
    (9th Cir. 2015)...................................................................................................5

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ........................................................15

*Little Seeds Children's Center., Inc. v. Citibank*, 2025 WL 3141496
    (N.D. Cal. Nov. 10, 2025)...............................................................................18

*Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.*, 41 Cal. App. 5th 357
    (2019) ...............................................................................................................9

*Maldini v. Marriott International, Inc.*, 140 F.4th 123 (4th Cir. 2025)....................................23

*Manderson-Saleh v. Regents of University of California*, 60 Cal. App. 5th 674 (2021)................7

*Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469 (W.D. Pa. June 15, 2009).................23

*Miller v. United States*, 363 F.3d 999 (9th Cir. 2004) ...........................................................21

*Mirkin v. Wasserman*, 858 P.2d 568 (Cal. 1993)....................................................................14

*Murphy v. Olly Public Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023)...........................18

*Newton v. American Debt Services, Inc.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012) .......................12

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ..................................5

*Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ................................12

*Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025) ................................12

*Penthouse International, Ltd. v. Barnes*, 792 F.2d 943 (9th Cir. 1986) .......................................21

*Pokorny v. Quixtar Inc.*, 2008 WL 850358 (N.D. Cal. Mar. 31, 2008).......................................12

*Ponkey v. LLR, Inc.*, 2021 WL 4595801 (C.D. Cal. Aug. 5, 2021) ................................12

*Ponkey v. LLR, Inc.*, 2024 WL 4328770 (C.D. Cal. Sept. 5, 2024)................................12

*Ponkey v. LLR, Inc.*, 2025 WL 3034693 (9th Cir. Oct. 30, 2025) ...........................12, 13

*Pooshs v. Philip Morris USA, Inc.*, 904 F.Supp.2d 1009 (N.D. Cal. 2012) ..................................17

*Prasad v. Pinnacle Property Management Services, LLC*, 2018 WL 4599645
    (N.D. Cal. Sept. 25, 2018) ................................................12

*Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024) ............................10, 11, 12, 13

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899 (2015) ................................................22

*Schulz v. BMW of North America, LLC*, 472 F.Supp.3d 632 (N.D. Cal. 2020).............................9

*Schwartz v. Finn*, 2020 WL 13599735 (N.D. Cal. July 24, 2020)................................................12

*Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) ..................11, 22

*Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038 (N.D. Cal. 2024)........................................................20

*Sonner v. Premier Nutrition Corp*, 971 F.3d 834 (9th Cir. 2020) ................................................18

*Suski v. Marden-Kane, Inc.*, 2022 WL 3974259 (N.D. Cal. Aug. 31, 2022)................................22

*Taylor v. Sturgell*, 553 U.S. 880 (2008)................................................................................6

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ................................................13, 14, 22

*Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ................................11

*United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025)......................................16, 17

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................15

*Vianu v. AT&T Mobility LLC*, 2020 WL 3103797 (N.D. Cal. June 11, 2020)................12, 15, 18

*Vine v. PLS Financial Services, Inc.*, 807 F. App'x 320 (5th Cir. 2020) ......................................21

*Wi2Wi, Inc. v. Twin City Fire Insurance. Co.*, 2020 WL 4913489
    (N.D. Cal. May 5, 2020) ................................................19

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)................................................15

*Wohlfiel v. Adobe Inc.*, No. 5:25-cv-6562 (N.D. Cal.) ................................................5

*Zhang v. Ancestry.com Operations Inc.*, 2022 WL 718486 (N.D. Cal. Mar. 10, 2022)................6

**STATUTES**

28 U.S.C. § 2072(b) ........................................................................................................23

California Business and Professions Code § 17601(a)(4) ...........................................17

California Civil Code § 1751 .....................................................................................13, 22

California Civil Code § 1761(d) ...................................................................................17

California Civil Code § 1781 .......................................................................................22

**TREATISES**

22A Am. Jur. 2d Declaratory Judgments § 169 ........................................................19

26 C.J.S. Declaratory Judgments § 152 ....................................................................19

Wright, Miller, Kane, & Steinman, 10B Fed. Prac. & Proc. Civ. § 2768 (4th ed.) ......................19

1

**INTRODUCTION**

2    This case challenges Adobe's systematic use of deceptive subscription practices and

3  procedural maneuvering to extract recurring payments from consumers while insulating itself from

4  legal accountability. Adobe designs its subscription flow to obscure material terms, locks consumers

5  into automatically renewing plans, imposes substantial penalties for cancellation, then deploys a maze

6  of contractual provisions to prevent consumers from ever reaching a merits adjudication.

7    Multiple lawsuits have previously been filed challenging Adobe's subscription practices. In

8  each of those cases, Adobe has taken the same threshold position: that the company's arbitration

9  provision governs and that the plaintiffs failed to comply with it.

10    This case exposes the hollowness of that position. Plaintiff Foret did exactly what Adobe

11  claimed consumers must do. He complied with Adobe's dispute resolution scheme, submitted a

12  Notice of Claim, waited through the informal resolution period, and filed an arbitration demand with

13  Adobe's chosen arbitration provider. Only then did Adobe reverse course—refusing to pay arbitration

14  fees, opting out of arbitration, and insisting that Foret's claims be forced into small claims court.

15    Having engineered the unavailability of arbitration, Adobe now contends that this case

16  presents no materially different issues from those in which it previously argued arbitration was

17  mandatory. That position cannot be reconciled with Adobe's own conduct. This case presents

18  precisely the scenario Adobe claimed was missing before—and it demonstrates that Adobe's dispute

19  resolution framework is not a good-faith mechanism for resolving disputes, but a barrier designed to

20  ensure that disputes are never resolved on the merits.

21    Adobe's consumer deception is not an isolated misstep or technical oversight, but a business

22  model. Adobe markets subscriptions using misleading price presentations, withholds material

23  information about renewal and cancellation, penalizes consumers who attempt to exit, and then relies

24  on layered procedural obstacles to prevent legal scrutiny. These sorts of tactics are exactly why

25  California enacted consumer protection statutes governing automatic renewals, unfair competition,

26  false advertising, and deceptive practices—and why Adobe should be held responsible for violating

27  those statutes in this case. And when consumers attempt to invoke those protections, Adobe's

28  response is not to defend its conduct, but to deny consumers any effective forum. As this case

1

illustrates, even full compliance with Adobe's own arbitration provisions leads nowhere: Adobe simply opts out and demands small claims adjudication, where individual consumers cannot realistically vindicate statutory rights or address widespread misconduct.

This action seeks to halt that cycle. It asks the Court to determine whether Adobe may deploy its Terms of Use ("Terms") to foreclose arbitration, bar class relief, and force consumers into an inadequate forum—after the consumer has done everything Adobe demanded. Until Adobe's contractual scheme is subjected to judicial scrutiny, its deceptive practices will remain effectively immune from challenge.

## BACKGROUND

## I. ADOBE'S SUBSCRIPTION-BASED SOFTWARE MODEL, SUBSCRIPTION FLOW, AND CANCELLATION PROCESS

Adobe provides digital content creation and editing software. Class Action Complaint, Dkt. 1 ("CAC") ¶¶ 73-91. Consumers access Adobe's products only through recurring subscriptions that remain usable solely while the subscription is active. *Id.* ¶¶ 80-81, 83-85, 90-93. Adobe offers three types of subscriptions: "Annual," "Annual, billed monthly" ("ABM"), and "Monthly." *Id.* ¶ 92. ABM subscriptions require a 12-month commitment, with the total annual cost divided into monthly payments. *Id.* Most Adobe products and bundles are available under the ABM model. *Id.* ¶¶ 92-93. All subscription types renew automatically at the end of the term unless canceled. *Id.* ¶ 93.

Consumers purchase Adobe subscriptions through Adobe's website. During the subscription process (the "Subscription Flow"), Adobe prominently displays prices on a per-month basis. CAC ¶¶ 100-14, 130. That monthly price corresponds to the ABM plan, which carries a substantially higher total cost over a 12-month term. *Id.* ¶ 103. After selecting a product, consumers are taken through a series of screens that include product upsells and require the entry of personal and billing information. *Id.* ¶¶ 97-126. Consumers are prompted to complete their purchase by clicking "Agree and subscribe." *Id.* ¶¶ 118, 126. During this process, consumers are not required to view Adobe's Terms, nor scroll through them, and nor affirmatively acknowledge them. *Id.* ¶¶ 121, 156, 180. The Terms are accessible only via an inconspicuous hyperlink and are not presented in full during checkout. *Id.*

2

Adobe does not clearly or conspicuously disclose material subscription terms during the Subscription Flow, including the length of commitment, the automatic renewal feature, the cancellation restrictions, the early termination fee, or the total cost of ABM subscriptions. CAC ¶¶ 127-63. When consumers attempt to cancel their subscriptions, Adobe routes them through a multi-step process that may include warnings, alternative offers, and additional screens. *Id.* ¶¶ 164-70. If a consumer cancels a subscription before the end of the 12-month term, Adobe charges an early termination fee equal to 50% of the remaining payments. *Id.* ¶ 7, 148, 158, 164.

## II.     ADOBE'S DISPUTE RESOLUTION PROCESS

Adobe's Terms contain a multi-step dispute resolution framework. CAC ¶¶ 179-93. The Terms require consumers to submit a written Notice of Claim and attempt informal resolution before initiating formal proceedings. *Id.* ¶ 183. If informal resolution fails, the Terms provide that disputes may proceed in arbitration or small claims court, subject to a one-year contractual limitations period. *Id.* ¶ 184; Dkt. 1-1 (Terms) § 14.1. The Terms also include a class action waiver within the dispute resolution section. Terms § 14.2. The Terms further provide that if a party files a claim in arbitration that could be brought in small claims court, the other party may elect to have the dispute decided in small claims court instead. CAC ¶ 187. Under the Terms, arbitration remains administratively closed unless a small claims court orders the matter to proceed in arbitration. *Id.* ¶ 187; Terms § 14.5.

## III.    PLAINTIFF FORET'S EXPERIENCE WITH ADOBE'S SERVICES

Plaintiff Dustin Foret is an individual consumer and an Adobe subscriber who used his subscription for personal, family, or household purposes. CAC ¶¶ 17, 138, 257. In April 2022, Foret subscribed to Adobe software through Adobe's online Subscription Flow. *Id.* ¶¶ 194-97. Based on the information presented during checkout, Foret believed he was signing up for a month-to-month subscription and did not understand that he was committing to a 12-month term with automatic renewal and a cancellation penalty. *Id.* ¶ 194.

When Foret later attempted to cancel his subscription, he encountered obstacles in the cancellation process and was charged an early termination fee. CAC ¶ 17, 196. He subsequently subscribed to a different Adobe software bundle under an annual plan and remains an Adobe customer. *Id.*

## IV.     FORET FOLLOWED ADOBE'S DISPUTE RESOLUTION PROCESS, AND ADOBE OPTED OUT OF ARBITRATION

Before filing this action, Foret followed the dispute resolution process set forth in Adobe's Terms. CAC ¶¶ 198-213. Specifically, on October 1, 2024, Foret (along with approximately 1,000 other individuals) submitted an individualized written Notice of Claim to Adobe. *Id.* ¶¶ 198-99; *see also* Dkt. 20-1, 20-2. Those Notice of Claim forms were individualized letters that were mailed to Adobe and delivered in two boxes. Dkt. 20-2. The Notice identified the specific subscription at issue, described Adobe's conduct during the subscription and cancellation process, explained the resulting harm, and stated the relief sought. CAC ¶¶ 198-99. Foret then waited through the 30-day contractual informal resolution period, during which he remained willing to resolve the dispute without litigation, but Adobe did not respond during that period. *Id.* ¶¶ 198-200.

Rather than engage in the contractually required 30-day "informal" dispute resolution process, Adobe sent a letter on the 30-day mark stating that Foret failed to comply with the Terms and demanded that he restart the 30-day period by filing a new Notice of Claim. CAC ¶¶ 200-01. Adobe's position rested on an argument that a Notice of Claim "cannot be combined with a Notice of Claim for other individuals" and took the position that the delivery of multiple claims in the same container violated the Terms. *Id.* ¶ 201. Adobe declined to engage in any sort of informal dispute resolution, and on May 23, 2025, Foret (and other claimants) followed the Terms and initiated arbitration before JAMS. *Id.* ¶¶ 203-04. When JAMS invoiced Adobe for $192,500.00, Adobe refused to pay the invoice and refused arbitration. *Id.* ¶¶ 205-06. Instead, Adobe submitted a letter to JAMS opting out of arbitration, electing to resolve all of Foret's claims in small claims court, and asserting that it would only proceed to arbitration if compelled to do so by court order. *Id.* ¶¶ 207-12. JAMS administratively closed the arbitration on June 17, 2025. Dkt. 20-5.

On October 27, 2025, Foret filed this action to dispute Adobe's assertion that it may unilaterally force his claims into small claims court under these circumstances—seeking a judicial determination regarding the enforceability of the small claims provision and Adobe's decision to forgo arbitration after Foret complied with the contractual dispute resolution process. Foret also seeks damages and equitable relief under California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act.

## ARGUMENT

## I.    THE COURT SHOULD NOT DISMISS OR STAY THIS ACTION

Adobe asks this Court to dismiss this action under the first-to-file rule, or, alternatively, stay it under the claim-splitting doctrine, based on its similarity to *Wohlfiel v. Adobe Inc*., No. 5:25-cv-6562 (N.D. Cal.). Adobe misapplies those legal principles.

### A.    The Discretionary First-To-File Rule is Inapplicable to this Case

The first-to-file rule permits a court, in its discretion, to stay or dismiss a later-filed action that involves the same parties and issues as an earlier-filed case in a different district. *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982)). Adobe only asks for dismissal under this rule. But the rule does not apply here, for three reasons.

*First*, this action and *Wohlfiel* are not sufficiently "identical," *Pacesetter Sys.*, 678 F.2d at 95, to trigger the rule. Although both cases concern Adobe's subscription practices, the procedural posture and issues presented are materially different. Foret first pursued his claims in arbitration, and Adobe refused to arbitrate, insisting that Foret's claims proceed in small claims court. CAC ¶¶ 198-213. In contrast, the *Wohlfiel* plaintiffs never attempted arbitration and instead mount a facial challenge to Adobe's Terms, including the arbitration provision itself. *See Wohlfiel*, No. 5:25-cv-06562, Dkt. 1. Foret also seeks relief not sought in *Wohlfiel*, including a declaration that Adobe's small claims provision is unenforceable, CAC ¶¶ 245-54, while *Wohlfiel* asserts causes of action Foret does not, such as conversion and unjust enrichment. The cases do not present "identical" enough issues for the first-to-file rule to apply. Indeed, Judge Cousins, presiding over *Wohlfiel*, recognized distinctions between the actions, determining under Civil Local Rule 3-12 that this case and *Wohlfiel* are not related. Dkt. 17. Nearly every lawsuit has some legal or factual overlap with some previously-filed case; first-to-file precedents use language like "identical" and "the same," *Pacesetter Sys.*, 678 F.2d at 95, to ensure that this narrow doctrine focusing on truly duplicative cases stays just that.

*Second*, both cases are pending in the same district. The first-to-file rule is a doctrine of inter-district comity. *Id*. at 94-95. The Ninth Circuit has expressly declined to decide whether the rule applies to intradistrict cases, and courts in this circuit have declined to apply it in that posture. *See*

*Dolores Press, Inc. v. Robinson*, 766 F. App'x 449, 453 (9th Cir. 2019); *Zhang v. Ancestry.com Operations Inc.*, 2022 WL 718486, at *7 (N.D. Cal. Mar. 10, 2022). The Northern District already has a mechanism for managing similar cases—the related-case rule—which was already invoked by Adobe and resolved against it. This Court should likewise decline to apply the first-to-file rule.

*Third*, dismissal is inappropriate even if the first-to-file rule were otherwise applicable. The first-to-file rule typically supports a stay or transfer, not dismissal. Adobe cites no circuit authority approving dismissal of a putative class action under the rule. To the contrary, the Ninth Circuit has cautioned that dismissal is improper where it would prejudice the second-filed plaintiff. *Dolores Press, Inc.*, 766 F. App'x at 453-54; *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 629 (9th Cir. 1991) (directing stay in later-filed action to avoid statute-of-limitations prejudice).

That concern is acute here. Dismissing Foret's case—before class certification (not to mention a decision on a motion to dismiss) in *Wohlfiel*—would risk extinguishing his claims altogether if certification is denied, narrowed, or delayed beyond the limitations period. Such a result would also conflict with Supreme Court precedent encouraging early, parallel class filings. *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018) ("With class claims . . . efficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives[.]"). Rule 23 contemplates that multiple class actions may proceed simultaneously so courts can determine, on a full record, whether class treatment is appropriate and who should serve as class representative. Given the material differences between the cases, the uncertainty of class certification in *Wohlfiel*, and the substantial prejudice dismissal would cause, Adobe's request to invoke the first-to-file rule should be denied.

## B.     The Claim-Splitting Doctrine is Inapplicable to this Case

Adobe alternatively seeks a stay under the claim-splitting doctrine pending resolution of the *Wohlfiel* action. Claim splitting applies only where "the causes of action and relief sought" are the same and "the parties or privies" are the same. *Adams v. California Dep't of Health Servs*., 487 F.3d 684, 689 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Neither requirement is met here.

As discussed above, this case and *Wohlfiel* do not assert the same causes of action or seek the same relief. More importantly, the parties are not the same, nor are they in privity. Foret is not a plaintiff in *Wohlfiel*, and no class has been certified in that case. Absent class certification, a putative class action cannot bind absent class members, and claim-splitting does not apply. *Bowles v. Leprino Foods Co.*, 2020 WL 3256845, at *4 (E.D. Cal. June 16, 2020). Adobe relies on a single decision staying a later-filed class action based on a similar, uncertified class. *See* Mot. at 12. That approach is the exception, not the rule, and conflicts with the settled principle that putative class members are not parties or privies prior to certification. Because the prerequisites for claim splitting are not satisfied, the claim-splitting doctrine provides no basis to stay this action.

## II.     FORET SUBSTANTIALLY COMPLIED WITH THE NOTICE AND INFORMATION DISPUTE RESOLUTION REQUIREMENTS

Adobe argues that Foret failed to satisfy the notice and informal dispute resolution provisions of the Terms and thus cannot proceed in this action. However, California law requires only substantial compliance, not rigid or hyper-technical adherence, absent prejudice. *See Manderson-Saleh v. Regents of Univ. of Cal.*, 60 Cal. App. 5th 674, 701 (2021) (substantial compliance means "compliance with the substantial or essential requirements of something (as a statute or contract) that satisfies its purpose or objective even though its formal requirements are not complied with") (cleaned up). "Where there is compliance as to all matters of substance, technical deviations are not to be given the stature of noncompliance. Substance prevails over form." *Id.* (cleaned up).

Here, Foret sufficiently complied with the dispute resolution process to meet the substantial compliance standard. On October 1, 2024, as required by the Terms, he submitted a written Notice of Claim identifying himself, his Adobe account and subscription, the challenged practices, the factual and statutory bases for his claims, and the relief sought. CAC ¶¶ 198-99; *see also* Dkt. 20-1. Rather than engage in the contractually-required 30-day "informal" dispute resolution process, Adobe sent a letter on the 30-day mark asserting that Foret failed to comply with the Terms and demanding that he restart the 30-day period by filing a new Notice. CAC ¶¶ 200-01. Adobe argued that a Notice of Claim "cannot be combined with a Notice of Claim for other individuals" and took the position that the delivery of multiple notices in the same container, even though each notice was for a separate

1  individual, nonetheless violated the Terms. *Id.* ¶ 201. Adobe declined to engage in any sort of informal

2  dispute resolution, and on May 23, 2025, Foret (and other claimants) followed the Terms and initiated

3  arbitration before JAMS. *Id.* ¶¶ 203-04. When JAMS invoiced Adobe for $192,500.00, Adobe refused

4  to pay the invoice and refused arbitration. *Id.* ¶¶ 205-06. Instead, Adobe submitted a letter to JAMS

5  opting out of arbitration, electing to resolve all of Foret's claims in small claims court, and asserting

6  that it would only proceed to arbitration if compelled to do so by court order. *Id.* ¶¶ 207-13.

7       Adobe argues in its motion that Foret (1) was required to contact Adobe customer care before

8  sending his notice, (2) was barred from sending his notice in the same container as notices for other

9  consumers, and (3) needed to provide additional personalized information at Adobe's request, like

10  the date of his purchase and cancellation. But none of this is required by the plain language of the

11  dispute resolution process.

12       *First*, Adobe's Terms do not contain compulsory language to contact Adobe Customer Care.

13  *See* Terms § 14 ("Adobe Customer Care is available to address most concerns that you may have

14  regarding Adobe's Services and Software . . . . If you have any concern or dispute that Adobe

15  Customer Care is unable to resolve ('Claim'), you agree to first try to resolve the dispute informally

16  and in good faith by contacting us and providing a written Notice of Claim to the address provided in

17  section 18.2."). And although the Terms refer to a "dispute that Adobe Customer Care is unable to

18  resolve," there is no language requiring a contact with customer care or noting how it is determined

19  what disputes customer care is "unable" to resolve.[1] *Id.*

20       Moreover, Adobe should be equitably estopped from invoking strict compliance with the

21  Terms' dispute resolution requirements. Foret submitted a Notice of Claim and waited through the

22  contractual resolution period in good faith. Adobe responded only at the end of that period, summarily

23  rejecting the Notice on technical grounds rather than engaging in the required informal resolution

24

---

25  [1] The Terms suggest contacting Customer Care related to "concerns" regarding "Services" (defined
   as "use of and access to our websites, web-based applications and products, customer support,
26  discussion forums or other interactive areas or services, and services such as Creative Cloud") and
   "Software" (defined as "your installation and use of any software that we include as part of the
27  Services, including, without limitation, mobile and desktop applications, Sample Files and Content
   Files (described below), scripts, instruction sets, and related documentation."). Terms § 14. Foret's
28  claims relate to deceptive trade practices, not to "concerns" with Adobe's "Services" or "Software."

process. In response to Foret's Notice of Claim, Adobe did not assert that Foret was not in compliance with the dispute procedures by allegedly failing to contact consumer care. Dkt. 20-2. Having frustrated the process through delay and procedural gamesmanship, Adobe cannot now rely on that same process to argue non-compliance. Equity does not permit a party to induce compliance with contractual procedures and then exploit its own obstructive conduct to defeat the other party's claims. *See Schulz v. BMW of North America, LLC*, 472 F.Supp.3d 632, 639 (N.D. Cal. 2020) ("Equitable estoppel is a doctrine that precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (cleaned up).

*Second*, nothing in the Terms prohibited Foret from transmitting his Notice of Claim in the same container as other claimants. *See* Terms § 14.1 ("The Notice of Claim . . . cannot be combined with a Notice of Claim for other individuals.") Foret's Notice of Claim was a standalone letter. *See* Dkt. 20-1. It was sent in the same box as other claimants' Notices of Claim, but Adobe does not explain how this "combined" Foret's Notice of Claim with those of other individuals. *See* Mot. at 14. Adobe received exactly what it contractually required from Foret—an individual notice of dispute. In any event, Foret has still substantially complied with this the transmittal requirements because there was "no [*sic*] departure from the terms of the contract," and any technical defects in the delivery method are immaterial, as Adobe "g[ot] practically what the contract calls for." *Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App. 5th 357, 364 (2019) (citations omitted).

*Finally*, Adobe's claim that Foret's failure to provide information including specific services purchased and dates of purchase renders his Notice of Claim defective is unsupported by the Terms. *See* Terms § 14.1 ("The Notice of Claim must provide Adobe with fair notice of your identity, a description of the nature and basis of your Claim, and the relief you are seeking, including the specific amount of any monetary relief you are seeking . . . ."). The supposedly missing information that Adobe complains of is simply not required under the contract. And Foret also specifies the monetary relief he seeks: the overcharge attributable to Adobe's deceptive practices as well as attorney fees and costs. Dkt. 20-1. Foret did not give an exact number for these damages because that number cannot be known until there is additional information from Adobe and the dispute is finally resolved.

1   Ultimately, Foret substantially complied with Adobe's Terms. Adobe was on fair notice of

2   Foret's claims when he sent his Notice of Claim to Adobe on October 1, 2024. Adobe's attempts to

3   nitpick at alleged non-compliance with its Terms—which Adobe itself refused to follow by declining

4   to engage in the mandatory 30-day informal dispute resolution process—are not persuasive.

5   **III.    FORET HAS PLAUSIBLY AND TIMELY ALLEGED DECEPTIVE AND UNLAWFUL PRACTICES BY ADOBE**

6   Adobe advances six merits-based arguments in favor of its motion to dismiss: (1) Foret's

7   claims are barred by the one-year contractual limitations period; (2) Foret fails to sufficiently allege

8   reliance; (3) Foret's claims fail to plead misleading statements regarding Adobe's annual billed

9   monthly plan; (4) Foret is not a "consumer" for purposes of the CLRA; (5) Foret is not entitled to any

10  injunctive or equitable relief under the CLRA, FAL, or UCL; and (6) Foret fails to show entitlement

11  to any declaratory relief as to the Adobe Terms' small claims provision. Each is without merit.

12  **A.    Adobe's Contractual Limitations Defense Relies on an Unconscionable**

13  **Provision of its Terms of Use**

14  Under California law, contractual provisions, including limitations provisions, are

15  unenforceable if they are unconscionable. Unconscionability has two prongs, procedural and

16  substantive unconscionability. "[T]he more substantively oppressive the contract term, the less

17  evidence of procedural unconscionability is required to come to the conclusion that the term is

18  unenforceable, and vice versa." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)

19  (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83 (2000)). Adobe's one

20  year limitations period is both procedurally and substantively unconscionable.

21  **1.    Adobe's One-Year Contractual Limitations Period is Procedurally**

22  **Unconscionable**

23  Adobe's limitations period is procedurally unconscionable because the Terms have elements

24  of adhesion and surprise. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024)

25  ("Under California law, there are degrees of procedural unconscionability. At one end of the spectrum

26  are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural

27  unconscionability. Contracts of adhesion that involve surprise or other sharp practices lie on the other

28  end of the spectrum.") (cleaned up). A contract of adhesion is "a standardized contract, imposed upon

the subscribing party without an opportunity to negotiate the terms." *Shroyer v. New Cingular*

*Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007) (citation omitted). Adobe, a large worldwide company, has greater bargaining power than Foret, and Adobe's Terms are a standard form not subject to negotiation. CAC ¶¶ 73, 91-93, 100-23. The Terms therefore have an element of adhesion. *See id.*

In addition to oppression, the Terms involve "surprise." "Surprise may occur when the allegedly unconscionable provision is hidden within a prolix printed form." *Ronderos*, 114 F.4th at 1091 (internal citation omitted). The limitations period here is even more hidden than in similar cases that found procedural unconscionability. For example, Foret was not required to view the Terms or check a box before subscribing to Adobe's software. CAC ¶¶ 121, 156, 180. The Terms are forty-four pages long, the limitations period does not appear until page 35, and there is no heading, let alone a prominent one, identifying the reduced limitations period. *See generally* Terms. Indeed, Adobe adds a text box just before the paragraph with the limitations period that purports to explain what "Section 14.1 means," but that text fails to mention the limitations period. *Id.* § 14.1. The limitations period is at very end of the second longest paragraph in the Terms, and that single sentence uses a defined term and the passive voice to avoid calling attention to the fact it is something the consumer must do. *Id.*

This is more than enough to find a significant degree of procedural unconscionability. *See, e.g. Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *3, *14-15 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (finding procedural unconscionability where "the ordering webpage has no requirement that customers view the TOS or click to accept the TOS"); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 578 (N.D. Cal. 2025) (finding the "hallmark of procedural unconscionability" where the challenged term was "not visually highlighted or differentiated in anyway"); *Gerber v. Twitter, Inc.*, 2024 WL 5173313, at *6 (N.D. Cal. Dec. 18, 2024) (finding procedural unconscionability even though challenged provisions "appear[ed] under a bolded header in 30-point font" in terms only 12 pages long).

### 2. Adobe's One-Year Contractual Limitations Period is Substantively Unconscionable

Because the Terms exhibit procedural unconscionability, the Court should consider substantive unconscionability. Where, as here, there is a "marked degree of procedural unconscionability, less evidence of substantive unconscionability is required." *Frasco*, 349 F.R.D. at

578 (cleaned up). "Substantive unconscionability focuses on the one-sidedness of the contract terms and whether it will have an overly harsh effect on the disadvantaged party." *Vianu v. AT&T Mobility LLC*, 2020 WL 3103797, at *6 (N.D. Cal. June 11, 2020) (cleaned up). The limitations period here is substantively unconscionable because it is unilateral, substantially shortens the limitations period, and is connected to the date of the alleged event, not discovery of the claim.

The Ninth Circuit's decision in *Ponkey v. LLR, Inc.*, 2025 WL 3034693 (9th Cir. Oct. 30, 2025), is directly on point and, while not precedential, is still instructive. The plaintiffs in *Ponkey* brought claims under the UCL and FAL, among other claims. *Ponkey v. LLR, Inc.*, 2021 WL 4595801, at *1 (C.D. Cal. Aug. 5, 2021). The plaintiffs argued that a contractual one-year limitation period was unconscionable, but the district court disagreed. *Ponkey v. LLR, Inc.*, 2024 WL 4328770, at *6 (C.D. Cal. Sept. 5, 2024). The Ninth Circuit reversed, ruling that even with only a "low level of procedural unconscionability," the limitations period was substantive unconscionability because it was unilateral, shortened the limitation periods from the statutory three years down to one year, and waived California's discovery rule by connecting the limitation period to the alleged conduct instead of discovery of the claim. *Ponkey*, 2025 WL 3034693 at *1-2.

*Ponkey* is not alone. Courts in this district and circuit agree that contractual limitation periods create unconscionability when they are (1) unilateral, *see, e.g.*, *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *2 (9th Cir. Aug. 27, 2025);[2] (2) reduce a limitations period of three or four years down to one year (including for consumer claims like the CLRA, UCL, or fraud), *e.g.*, *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 732 (N.D. Cal. 2012);[3] or (3) deprive the plaintiffs of the discovery rule, *Ronderos*, 114 F.4th at 1095.

---

[2] *See, e.g.*, *Ronderos*, 114 F.4th at 1094-95 (unilaterally shortened limitation period is substantively unconscionable); *accord Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL 4599645, at *6 (N.D. Cal. Sept. 25, 2018); *Jewelers Mut. Ins. Co. v. ADT Sec. Servs., Inc.*, 2008 WL 5383371, at *2 (N.D. Cal. Dec. 22, 2008); *Pokorny v. Quixtar Inc.*, 2008 WL 850358, at *14 (N.D. Cal. Mar. 31, 2008), *aff'd*, 601 F.3d 987 (9th Cir. 2010); *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 2008 WL 3876341, at *9 (E.D. Cal. Aug. 20, 2008), *aff'd and remanded*, 622 F.3d 996 (9th Cir. 2010); *see also Armendariz*, 24 Cal. 4th at 117 (same).

[3] *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *11 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025) (reduction to one year for CLRA and UCL claims unconscionable); *Schwartz v. Finn*, 2020 WL 13599735, at *6 (N.D. Cal. July 24, 2020) (rejecting application of one-

Here, Adobe's shortened limitations period fails on all three counts. It is unconscionable because it is (1) unilateral, (2) significantly shortens the period, and (3) deprives consumers of the discovery rule. _First_, the limitations period is one-sided: Adobe's Terms state that "Claims related to the Terms, Services, or Software are permanently barred if not brought within one year of the event resulting in the Claim." Terms § 14.1. "Claims" is a defined term that means a concern or dispute _that a consumer_ has. _Id_. Thus, the shortened limitation period only applies to consumers, not Adobe. _Second_, for consumer and public protection claims like Foret's under the UCL, CLRA, and FAL, shortening the three- and four-year statutes of limitations granted by the legislature to one year is a "substantial" shortening of the period. _Third_, the Terms' limitations period runs from "the event resulting in the Claim," and not from discovery of the claim. _Id_. As in _Ponkey_ and _Ronderos_, this phrasing deprives consumers of the discovery rule. _Ponkey_, 2025 WL 3034693 at *2; _Ronderos_, 114 F.4th at 1095. This is unconscionability three times over.

### 3.    The Contractual Limitation Period Is an Illegal Waiver Under the CLRA

Alternatively, as Adobe acknowledges in its own papers, the CLRA renders unenforceable and void any waiver of a statutory right provided under the CLRA. Mot. at 16 n.4; _Ting v. AT&T_, 319 F.3d 1126, 1147-48 (9th Cir. 2003); Cal. Civ. Code § 1751. This includes any attempt to assert a shorter limitations period. _Ting_, 319 F.3d at 1147. Thus, at least as to Foret's CLRA claim, the shortened limitations period is unenforceable and his claims are timely.

As Adobe points out, the Ninth Circuit has held that applying the anti-waiver provision of the CLRA to arbitration would create a conflict with the Federal Arbitration Act. Mot. at 16 n.4; _see Ting_, 319 F.3d at 1147-48. That concern is not present here because Adobe refused to arbitrate and there is thus no conflict with the FAA—a procedural posture that arises entirely out of Adobe's own conduct. Foret does not invoke the CLRA's anti-waiver provision to avoid arbitration; arbitration is

---

year contractual limitation to fraud and negligent misrepresentation claims); _In re Juul Labs, Inc., Antitrust Litig._, 555 F. Supp. 3d 932, 955 (N.D. Cal. 2021) (reduction to one year for UCL claim substantively unconscionable and unenforceable); _Brown v. Dow Chem. Co._, 2019 WL 484211, at *4 (N.D. Cal. Feb. 7, 2019) (shortening from three and four years down to 300 days unconscionable); _see also Harvey v. Katella Mobilehome Ests., L.P._, 2003 WL 22436265, at *5 (Cal. Ct. App. Oct. 28, 2003) ("By any stretch of the imagination, [a one year period] is no substitute for the three- and four-year statutes of limitations prescribed [by statute]").

unavailable because Adobe refused it. Enforcing the CLRA's anti-waiver provision under these circumstances does not conflict with the FAA, which preempts state law only to the extent it disfavors arbitration. *Ting*, 319 F.3d at 1147-48. Accordingly, the CLRA prohibits enforcement of Adobe's shortened limitations period as to Foret's CLRA claim.[4]

**B.    Foret has Pleaded His Fraud-Based Claims with Sufficient Particularity**

Adobe charges that Foret "has not alleged actual reliance on any specific statement or omission made by Adobe." Mot. at 16. Adobe contends that because "Plaintiff alleges a deceptive scheme sounding in fraud, his claims must be pled with factual specificity as required by Rule 9(b)." *Id.* Adobe has misstated the applicable standard—materially.

While Adobe is correct that "[a]n essential element for a fraudulent omission claim is actual reliance" and "a plaintiff must show that the defendant's nondisclosure was an immediate cause of plaintiff's injury-producing conduct," *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015), Adobe omits the case-dispositive guidance from the Ninth Circuit (relying on the California Supreme Court) that "[a] plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision." *Id.* (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). A plaintiff satisfies its burden of proof of a fraud-based omission "by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093  (1993)). The Ninth Circuit's controlling guidance continues: "That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Id.* (citing *In re Tobacco II*, 46 Cal. 4th at 326 ). "An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (cleaned up).

Here, Foret alleges that Adobe failed to adequately disclose material terms of its subscriptions—including cancellation restrictions, early termination fees, and limitations on consumers' ability to cancel or seek relief—at or before the point of purchase. CAC ¶¶ 138-71; 194; 261. At minimum, these allegations create a question of fact as to whether a reasonable consumer

---

[4] Adobe may argue, contrary to the allegations in the complaint, that it has not opted out of arbitration. But even then, there is at least a dispute as to the enforceability of the limitations period. Dismissal would not be appropriate.

1  would consider them important when deciding whether to subscribe. *See Williams v. Gerber Products*

2  *Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("California courts . . . have recognized that whether a business

3  practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").

4         Foret further alleges that he subscribed to Adobe's services without knowledge of these

5  material terms and that he would not have purchased or would have acted differently had Adobe

6  adequately disclosed them. CAC ¶¶ 194-95; 261; 273; 286. This is sufficient to establish reliance. *See*

7  *Daniel*, 806 F.3d at 1225; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327-28 (2011) (Plaintiff

8  stated a claim under the UCL by alleging that "(1) Kwikset labeled certain locksets with 'Made in

9  U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on

10  the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought

11  the locksets otherwise."). Foret comfortably meets the pleading standard established by the California

12  Supreme Court for his fraud-based omissions claims.

13         In any event, even if a heightened pleading standard applied, Foret's allegations cover the

14  "'the who, what, when, where, and how' of the alleged misconduct." Mot. at 17 (quoting *Vess v.*

15  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).[5] The CAC details the entire process of

16  Adobe's subscription flow, where terms are mentioned or not mentioned, and where deception occurs.

17  CAC ¶¶ 97-137. These statements (and omissions) were made by Adobe on Adobe's website. *Id*. The

18  CAC describes how relevant language, disclosures, or other displays of information have changed

19  over the relevant period. *Id*. The CAC alleges that Foret saw and went through the Subscription Flow,

20  that he saw the subscriptions and prices as displayed on the Adobe website, that he did this in April

21  2022, and that he cancelled in September 2023. CAC ¶¶ 17, 194-96. The CAC unequivocally covers

22  the who, what, when, where, and how.

23

24

---

25  [5] It bears noting that *Vess* holds that Rule 9(b) applies only where claims are "grounded in fraud,"
    and that where fraud is not an essential element, only specific fraud averments must satisfy Rule 9(b),

26  while non-fraud allegations remain subject to Rule 8. 317 F.3d at 1103-05. Here, many of Adobe's
    statutory violations in the CAC are not based on fraud—for example, UCL claims based on unfair or

27  unlawful prongs, and failure to comply with ARL requirements. *See Vianu*, 2020 WL 3103797, at *9
    (rejecting argument that plaintiff failed to allege reliance for UCL unfair and unlawful prongs

28  "because these claims are not predicated on fraud").

The CAC also specifies that Foret relied on these representations and omissions because, after going through the Subscription Flow, he "believed he was signing up for a month-to-month subscription," CAC ¶ 194; he "did not know he was committing to a yearlong contract, that the subscription would automatically renew, or that he would be subject to a cancellation penalty," *id.*; had he "known the terms of the subscription, he would not have agreed to it," *id.* ¶ 195; he was "induced to purchase" and "continue paying for" Adobe subscriptions and he "would not have subscribed, or would have canceled [his] subscriptions earlier," *id.* ¶ 261; he was "led to believe the subscription terms were straightforward and cancellation would be simple," *id.* ¶ 271; he "would not have made those purchases—or would not have agreed to the same terms," *id.* ¶ 273; and he "would have canceled [his subscription] before renewal to avoid additional charges," *id.* ¶ 286. Foret has adequately alleged (and will prove on a classwide basis) that, had Adobe disclosed the omitted information—including cancellation restrictions, early termination fees, and limitations on consumers' ability to cancel or seek relief—he and any other reasonable consumer would have been aware of it and behaved differently.

## C.    Adobe Misapplies the Ruling in *United States v. Adobe*

As Adobe notes in its brief, the United States Department of Justice—on a referral from the Federal Trade Commission—recently also brought a challenge related to Adobe's subscription practices. *United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025) (Wise, J.). That case involves factual allegations of deceptive trade practices related to billing for Adobe products. *Id.* at 971-81. Adobe moved to dismiss that government's complaint, but that motion was denied as to all counts. *Id.* at 990. Yet because Judge Wise opined in the order that the title "annual, paid monthly" is not confusing, Adobe argues that Foret's claims are entirely "foreclosed" by Judge Wise's decision. Mot. at 18-19. Adobe is incorrect.

Adobe has asked this Court to bind Foret—a non-party to the DOJ's case—to Judge Wise's decision. "The application of offensive nonmutual issue preclusion is appropriate only if there was a full and fair opportunity to litigate the identical issue in the prior action, the issue was actually litigated in the prior action, the issue was decided in a final judgment, and the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Pooshs v. Philip*

*Morris USA, Inc.*, 904 F.Supp.2d 1009, 1033-34 (N.D. Cal. 2012) (citation omitted). As an initial matter, Foret was not a party or in privity with the DOJ. Moreover, the claims in *United States v. Adobe* were brought under the federal Restore Online Shoppers' Confidence Act ("ROSCA"), not under the UCL, CLRA, FAL, ARL, or any California law. 791 F. Supp. 3d at 981. The court evaluated Adobe's disclosures under federal standards and federal regulations, not California's consumer-protection framework. *Id*. at 983-86. Those federal regulations do not govern California law—and in any event have since been vacated. *See Custom Commc'ns, Inc. v. FTC*, 142 F.4th 1060, 1075-76 (8th Cir. 2025) (vacating 16 C.F.R. §§ 425.1-425.9). Adobe's suggestion that the *United States v. Adobe* ruling "forecloses" Foret's claims is doctrinally wrong.

Further, Adobe mischaracterizes the scope of the Judge Wise's ruling. While Judge Wise stated that a reasonable consumer would not misunderstand the phrase "Annual, paid monthly" in isolation, she also found that Adobe plausibly failed to disclose other material subscription terms. *See Adobe*, 791 F. Supp. 3d at 985. Foret's claims are not limited to the meaning of the phrase "Annual, paid monthly." He alleges numerous additional deceptive practices, including misleading price presentations, inconsistent disclosures, obstacles to cancellation, and violations of California's Automatic Renewal Law—issues not adjudicated in *United States v. Adobe*. The Court should reject Adobe's *United States v. Adobe* argument.

### D.     Foret Alleges that He is a "Consumer" for Purposes of the CLRA

Adobe next contends that Foret is not a "Consumer" under the CLRA. Adobe correctly quotes the CLRA's definition of a "Consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Adobe's entire argument is that Foret "does not allege any facts to establish what his purpose was in subscribing to Adobe products, and therefore he fails to establish standing." Mot. at 19. This is wrong. But the CAC alleges that "Plaintiff and Class members are 'consumers' as defined by California Business and Professions Code § 17601(a)(4), in that they sought or acquired Adobe's software for personal, family, or household purposes." CAC ¶ 138; *see also id*. ¶ 257 ("Plaintiff and Class members are 'consumers' as defined by California Civil Code § 1761(d), in that they sought or acquired Adobe's goods and/or services for personal, family, or household purposes.").

**E.**     **Foret is Entitled to Seek Injunctive and Equitable Relief Against Adobe**

Adobe argues that Foret's request for injunctive and equitable relief should be dismissed based on a failure to "allege facts establishing the inadequacy of a remedy at law or a risk of future harm absent injunctive relief." Mot. at 19-20. That argument once again misapplies Ninth Circuit law and ignores the allegations in the CAC. A plaintiff may seek injunctive relief where he faces a real and immediate threat of future harm. In the consumer protection context, the Ninth Circuit has made clear that a current or prospective customer may seek injunctive relief when he is unable to rely on a defendant's representations going forward or "might purchase the product in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Foret adequately alleges such a risk here. He remains an Adobe subscriber, Adobe's challenged conduct is ongoing, and Adobe reserves the unilateral right to modify its Terms at any time. CAC ¶¶ 17, 197, 262, 274, 287, 289; Terms § 1.5. As a result, Foret continues to face automatic renewals, cancellation decisions, and subscription-related charges governed by the same unlawful disclosure and renewal practices. These allegations are sufficient to establish a credible threat of future harm. *See Vianu*, 2020 WL 3103797, at *9 (holding that current customers allegedly locked into recuring plans have standing for injunctive relief challenging those unfair practices); *Little Seeds Children's Ctr., Inc. v. Citibank*, 2025 WL 3141496, at *10 (N.D. Cal. Nov. 10, 2025) (noting that current customers may have injunctive standing under the UCL).

As to equitable relief, Adobe is again factually and doctrinally wrong. The CAC explains that Foret lacks an adequate remedy at law to ensure Adobe's future compliance with California's consumer protection statutes. CAC ¶ 290. This allegation is sufficient for equitable relief. *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1128-29 (N.D. Cal. 2023) (discussing *Sonner v. Premier Nutrition Corp*, 971 F.3d 834 (9th Cir. 2020), and agreeing with other courts that, at the pleading stage, alleging a lack of adequate legal remedies, even without more, is sufficient).

**F.**     **Foret is Entitled to Declaratory Relief**

Adobe argues that Foret is not entitled to declaratory relief concerning the small claims provision in Adobe's Terms. That argument conflates the pleading standard for declaratory relief with the merits of the declaration sought and ignores the live controversy alleged in the CAC.

At the pleading stage, the Court's role is limited to determining whether a justiciable controversy exists—not whether the plaintiff is ultimately entitled to the declaration he seeks. "In considering a motion to dismiss a claim for declaratory relief, the only question is whether, on the basis of the allegations, a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment and not whether the plaintiff is entitled to a favorable declaration." *Wi2Wi, Inc. v. Twin City Fire Ins. Co.*, 2020 WL 4913489, at *6, *8 (N.D. Cal. May 5, 2020) (cleaned up) (denying motion to dismiss where defendant focused on merits of declaratory judgment claim, rather than addressing whether plaintiff had pleaded a controversy suitable for declaratory relief).[6] The enforceability and scope of the small-claims provision are merits questions that may be addressed at summary judgment or trial, not on a Rule 12 motion.

Here, the CAC alleges an actual and immediate controversy. Adobe has invoked the small claims provision against Foret, refused to arbitrate on that basis, and asserts that the provision bars this action. CAC ¶¶ 206-09; Dkt. 20-4 at 1. Foret, in turn, seeks a declaration that the small claims provision is unenforceable and that Adobe waived arbitration. CAC ¶¶ 214-23, 245-54. This concrete dispute over the parties' present and future rights under an ongoing contract is a paradigmatic case for declaratory relief.

The parties' interests also are plainly adverse. Adobe maintains that it may unilaterally compel small claims adjudication and foreclose arbitration, whereas Foret contends that the small claims provision is unconscionable and unenforceable. This controversy is sufficiently immediate and real: Adobe has already relied on the provision to shut down arbitration, and absent judicial resolution, Foret cannot determine where—if anywhere—his claims may proceed.

---

[6] This point is widely repeated in civil procedure treatises. *See, e.g.*, Wright, Miller, Kane, & Steinman, 10B Fed. Prac. & Proc. Civ. § 2768 (4th ed.) ("All that is required [to survive a motion to dismiss a declaratory judgment claim] is a statement of a claim on which relief can be granted showing that the court has jurisdiction and that an actual justiciable controversy is involved."); 22A Am. Jur. 2d Declaratory Judgments § 169 ("The motion is not one on the merits but is to determine only whether the plaintiff is entitled to a declaration of rights, though not necessarily one in the plaintiff's favor."); 26 C.J.S. Declaratory Judgments § 152 ("On a motion to dismiss . . ., the question is whether a proper case is presented by the allegations of the pleading for invoking the jurisdiction of the court to make a declaratory judgment. The issue is not whether the plaintiff is entitled to a favorable declaration, or to a decision in accordance with what the plaintiff claims their rights to be.")

Adobe's remaining arguments do not defeat justiciability. Its reliance on *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038 (N.D. Cal. 2024), is misplaced. *Singh* addressed contract formation and expressly declined to reach unconscionability or enforceability. *Id*. at 1050-51. Nor does the existence of arbitration language eliminate the controversy whether the small claims provision—and more specifically, Adobe's ability to avoid arbitration—means Adobe's arbitration provision is not an "arbitration agreement" within the meaning of the Federal Arbitration Act.

Finally, Adobe's suggestion that these issues should be decided by an arbitrator or small claims court ignores Adobe's own Terms. Under the Terms, arbitration remains foreclosed unless and until a small claims court orders otherwise. Terms § 14.5. But Foret challenges the propriety of being forced into the small claims forum regardless of whether arbitration might be available—a forum that Adobe has stated that it will not engage with absent a ruling from a small claims court judge. Thus, whether Adobe may invoke the small claims provision in this manner is a threshold legal controversy appropriately resolved by this Court via a declaratory judgment.

## IV.     ADOBE'S RULE 23 ARGUMENTS ARE PREMATURE AND WITHOUT MERIT

Adobe argues that Foret's class claims are barred by a waiver contained in Adobe's arbitration provisions that purports to prohibit class or consolidation procedures. Mot. at 24-25. This argument fails for three independent reasons: (1) the waiver is limited to arbitration; (2) even if construed to apply in court, it is unenforceable under California law; and (3) the Court should not strike class allegations on the pleadings where enforceability is disputed on unconscionability grounds.

### A.     The Class Waiver Is Limited to Arbitration

The text and structure of the Terms show that the class waiver is part of the arbitration framework, not an "independently effective" waiver of the right to proceed as a class in court. The waiver appears in Section 14, surrounded by terms mandating arbitration and specifying arbitration procedures and fees. Terms § 14. The waiver also presupposes arbitration: it provides that if a portion of the waiver is deemed unenforceable as to a particular remedy, that remedy "must be severed from the arbitration and may be sought in court." *Id.* § 14.2. That language makes sense only if the waiver is describing what happens in arbitration, and how particular remedies might be excised from arbitration—not announcing a free-standing waiver applicable to litigation regardless of forum.

Courts addressing this "uncommon situation"—a defendant who cannot (or does not) compel arbitration but seeks to enforce a class waiver anyway—interpret such provisions as limited to arbitration absent unambiguous language extending them to court litigation. In *Vine v. PLS Financial Services, Inc.*, the Fifth Circuit rejected the argument that a class waiver embedded in an arbitration provision barred class litigation after the defendant waived arbitration, holding that the "most plausible" reading is that the waiver describes "the rules, rights, and procedures that apply if a dispute is arbitrated—'*not* as an independently effective waiver of the right to pursue a class action outside the arbitration context.'" 807 F. App'x 320, 328-29 (5th Cir. 2020) (quoting *Meyer v. Kalanick*, 185 F. Supp. 3d 448, 454 (S.D.N.Y. 2016)) (emphasis in original). Other courts are in accord. *See, e.g.*, *Meyer*, 185 F. Supp. 3d at 453-54 (alleged class action waiver appearing in "dispute resolution" section, sandwiched between provisions regarding arbitration, related only to arbitration and was not independently effective waiver outside arbitration context); *Fischer v. Instant Checkmate LLC*, 2022 WL 971479, at *4 (N.D. Ill. Mar. 31, 2022) (alleged class waiver limited to arbitration context where sentences before and after concerned arbitration, even though words of alleged waiver were not "specific to arbitration or litigation").

California canons of contract construction reinforce this point: provisions must be read in context, with each clause informing the other. *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) ("individual clauses and particular words must be considered in connection with the rest of the agreement" with "each clause helping to interpret the other") (citations omitted). Any ambiguity is construed against the drafter. *See Penthouse International, Ltd. v. Barnes*, 792 F.2d 943, 948 (9th Cir. 1986). Relatedly, California requires an intent to waive statutory rights "can only be waived by an explicit statement." *Miller v. United States*, 363 F.3d 999, 1006 (9th Cir. 2004). Adobe's provision is not an explicit statement that it bars class litigation outside arbitration—particularly where Adobe itself opted out of arbitration.

**B.    If the Class Waiver is Applicable to Litigation in Court, it is Unenforceable Under California Law**

Even if Adobe can invoke the class waiver in court after abandoning arbitration, enforcement of the waiver is still subject to ordinary California contract defenses. Class waivers outside arbitration

remain vulnerable to unconscionability under California law. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983-84 (9th Cir. 2007) (citing *Discover Bank v. Superior Court of Los Angeles*, 113 P.3d 1100 (Cal. 2005)). Under the *Discover Bank* rule, class waivers outside of the arbitration context are unconscionable if (1) the agreement is a "consumer contract of adhesion drafted by a party that has superior bargaining power;" (2) the agreement "occurs in a setting in which disputes between contracting parties predictably involve small amounts of damages;" and (3) "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* (citation omitted).

The CAC easily satisfies each factor: the Terms are adhesive; the amounts at issue predictably involve individually modest damages; and the CAC alleges a scheme that profits from widespread consumer confusion and small recurring charges. CAC ¶¶ 5; 144-60; 271; *see also Suski v. Marden-Kane, Inc.*, 2022 WL 3974259, at *4-5, n.1 (N.D. Cal. Aug. 31, 2022) (applying *Discover Bank/Shroyer* framework outside arbitration and rejecting a *Concepcion* preemption argument in that posture). And because Adobe has opted out of arbitration, applying California unconscionability law to a purported litigation-only class waiver does not "disfavor arbitration" and therefore does not implicate the FAA preemption concerns addressed in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). *See Meyer*, 185 F. Supp. 3d at 457-59 (rejecting *Concepcion* preemption argument where waiver was invoked outside arbitration); *Suski*, 2022 WL 3974259, at *4-5, n.1.

Independently, the CLRA's anti-waiver provision bars waiver of CLRA rights, and the CLRA expressly contemplates class actions. Cal. Civ. Code §§ 1751, 1781. Courts have recognized that CLRA anti-waiver principles invalidate class waivers—at least outside the FAA's arbitration-preemption context. *See Ting*, 319 F.3d at 1147; *Fisher v. DCH Temecula Imports LLC*, 187 Cal. App. 4th 601, 617 (2010); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 923 (2015); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 52 (2015) (discussing FAA preemption issues in the arbitration setting). Here, Adobe has refused arbitration, so the preemption rationale does not apply.

### C.    The Class Waiver Conflicts with the Rules Enabling Act

Adobe's attempt to enforce a class and consolidation waiver in federal court—after opting out of arbitration—raises an additional and independent problem under the Rules Enabling Act. The Act

1    provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any
2    substantive right." 28 U.S.C. § 2072(b). Rules 23 and 42 govern the procedures by which federal
3    courts may manage cases involving common questions of law or fact, including whether claims may
4    proceed on a classwide basis or be consolidated. When a dispute is litigated in federal court rather
5    than arbitration, those Rules—not private agreements—govern the Court's case-management
6    authority. A contractual provision that purports to bar class actions and consolidated proceedings in
7    court does not define the parties' substantive rights; it attempts to dictate how the Court may
8    administer its docket. Enforcing such a provision outside arbitration context would improperly
9    displace the Federal Rules and raise serious Rules Enabling Act concerns.

10        District courts confronting this issue outside the arbitration context have recognized that
11    distinction. In *Martrano v. Quizno's Franchise Co.*, the court declined to enforce a class action waiver
12    in litigation, reasoning that private parties may not contractually override Rule 23 in federal court.
13    2009 WL 1704469, at *19-21 (W.D. Pa. June 15, 2009). Similarly, in *In re Marriott International*
14    *Customer Data Security Breach Litigation*, the court held that enforcing a litigation-only class waiver
15    would impermissibly constrain the court's authority under Rule 23, although that decision was
16    reversed by the Fourth Circuit. 345 F.R.D. 137, 144-46 (D. Md. 2023), *rev'd sub nom. Maldini v.*
17    *Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025). Notably, the Fourth Circuit's decision in *Maldini*
18    drew from arbitration cases holding that class waivers do not invalidate arbitration agreements and
19    concluded that there was "no logical reason" to distinguish arbitration from litigation. 140 F.4th at
20    134. But that reasoning (which is not binding here) overlooks a critical difference repeatedly
21    emphasized by the Supreme Court: arbitration is a private forum governed by party-selected
22    procedures and the Federal Arbitration Act. *See Am. Express Co. v. Italian Colors Restaurant*, 570
23    U.S. 228, 233 (2013); *Concepcion*, 563 U.S. at 344. This is markedly different to federal courts, which
24    are bound by the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965)
25    ("When a situation is covered by one of the Federal Rules, the question facing the court is a far cry
26    from the typical, relatively unguided Erie Choice: the court has been instructed to apply the Federal
27    Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their
28    prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor

constitutional restrictions."); *see also Berk v. Choy*, --- U.S. ---, No. 24-440 (Jan. 20, 2026) (Slip. Op. at 4) ("[A] valid Federal Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test.") (citing *Hanna*, 380 U.S. at 469-74).

At bottom, the Federal Arbitration Act is a federal law, which can (and, in the arbitration context does) displace otherwise valid laws and rules for certain categories of cases. *See Concepcion*, 563 U.S. at 352 (rule contravening arbitration agreement "stands as an obstacle to the accomplishment and execution of the full purposes and objectives *of Congress*" (emphasis added)). But Adobe's Terms—and other privately-bargained agreements—are *not* federal statutes, and do not have the rule-displacing feature of federal statutory enactments. In fact, quite the opposite: a contractual waiver meant to alter civil procedure not in arbitration, but in federal court, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *id.*, in enacting the *Rules Enabling Act*—but with *no* Congressional pronouncement to authorize this divergence.

At base, the issue is this: *can private parties dictate the procedural rules in a federal judicial proceeding*? The usual answer is "no." Private parties cannot ordinarily agree, for example, on the form and timing of dispositive motions that will govern their disputes in an Article III court, nor on the form and timing of challenges to expert testimony in such an action. The reason is that within the federal court context, procedural issues are governed by the Rules Enabling Act, not the agreement of the parties. The FAA, as a separate, distinct federal statute, can properly displace the Rules Enabling Act under conflict preclusion principles, and therefore empowers parties—*within the context of arbitration*—to change procedural rules by agreement. Without a federal law empowering such a privately-bargained change, there is simply no legal authority to displace a Federal Rule of Civil Procedure in federal court by agreement. Adobe can no more "agree" in its Terms to displace Rules 23 and 42 in federal court than it can "agree" to exempt itself from Rule 11, from Rule 56(d) (allowing itself to move for summary judgment without providing any discovery), or from Rule 12(g)(2) (allowing itself to litigate piecemeal, successive motions to dismiss). Arbitration agreements could arguably alter any one of these procedures, and under the *Maldini* court's logic, if that is acceptable in an arbitration clause, it is acceptable in federal court. *Maldini* is wrong.

The Supreme Court's FAA preemption cases rest on the principle that requiring class procedures despite the parties' agreement to the contrary is incompatible with arbitration's fundamental attributes, not on the notion that private contracts may dictate federal court procedure. Once Adobe opted out of arbitration and forced this dispute into court, those arbitration-specific rationales no longer apply. As judges in this District have recognized, the enforceability of class waivers outside the arbitration context is unsettled. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 734 F. Supp. 3d 934, 954 (N.D. Cal. 2024) (noting that enforceability of Rule 23 waivers "when they are not contained in an arbitration clause" "does not appear to be a settled question"). At a minimum, this uncertainty counsels against striking Foret's class claims at this stage.

### D.    Striking Class Allegations at the Pleading Stage is Improper Where Enforceability and Unconscionability Are Disputed

Finally, Adobe offers no basis to strike class allegations on the pleadings. Courts in this Circuit are generally reluctant to strike class allegations before discovery, particularly where enforceability or unconscionability are at issue. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[T]he granting of [12(f)] motions to dismiss class allegations before discovery has commenced is rare.").

### CONCLUSION

The Court should deny Adobe's motion to dismiss, stay, and/or strike.

Dated: January 20, 2026

**JANOVE PLLC**

Raphael Janove (CA 361193)
raphael@janove.law
500 7th Avenue, 8th Floor
New York, NY 10018
Tel.: (646) 347-3940

Respectfully submitted,

**BATHAEE DUNNE LLP**

By: */s/ Andrew C. Wolinsky*
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Bryce W. Talbot (*pro hac vice*)
btalbot@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Allison Watson (CA 328596)
awatson@bathaeedunne.com
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
Tel.: (213) 458-7075

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Attorneys for Plaintiff and the Proposed Class*

Case No. 5:25-cv-09221-PCP    Plaintiff's Opposition to Adobe's Motion to Dismiss, Stay, and/or Strike

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILER ATTESTATION**

I am the ECF user who is filing this document.  Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: January 20, 2026                              By: */s/ Andrew C. Wolinsky*