UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN FORET,<br>Plaintiff,<br>v.<br>ADOBE INC.,<br>Defendant. | Case No. 25-cv-09221-PCP<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS, STAY, OR STRIKE**<br><br>Re: Dkt. No. 19 |

Plaintiff Dustin Foret brings this class action lawsuit against defendant Adobe Inc. for its allegedly misleading and deceptive practices in selling subscriptions to its software. Adobe now moves to dismiss Foret's claims under Rules 12(b)(1) and 12(b)(6) and moves to strike his class claims under Rule 12(f). For the following reasons, the Court grants Adobe's motion in part.

**BACKGROUND**

Plaintiff Dustin Foret brings this class action complaint on behalf of subscribers to Adobe's applications, such as Creative Cloud or Lightroom.[1] Complaint ¶¶ 17, 225. Adobe offers three types of subscriptions for its products: Annual; Annual, Billed Monthly (ABM); and Monthly. Complaint ¶ 12. Annual subscriptions are paid upfront. ABM subscriptions are paid on a monthly basis, and if the subscriber cancels before the end of the year, they must pay an early termination fee. Monthly subscriptions are billed monthly with no fee for cancelling.

In April 2022, Foret bought an "Annual, Billed Monthly" Adobe Creative Cloud All Apps subscription. Complaint ¶ 17. In September 2023, Foret cancelled his subscription and paid an $84

[1] For the purposes of defendants' Rule 12 motion, the Court assumes the truth of the facts alleged in plaintiff's complaint.

United States District Court
Northern District of California

cancellation fee. Complaint ¶ 187. Foret alleges that consumers who purchase a subscription from Adobe are led through a series of webpages culminating in a "Checkout Page" that informs the prospective purchaser, "By clicking 'Agree and subscribe,' you agree: You will be charged US$19.99 (plus tax monthly)…. Cancel before Jul 15, 2025 to get a full refund and avoid a fee. You also agree to the Terms of Use and the Subscription and Cancellation Terms." Complaint ¶ 114. "Terms of Use" and "Subscription and Cancellation Terms" are both underlined and in blue font as distinguished from the otherwise black text. Complaint ¶ 114; *see also id.* ¶¶ 114, 121, 127–28; Motion to Dismiss at 3–4.

Adobe's Terms of Use (TOU) includes at least three provisions relevant here. *See* Dkt. No. 1-1, Exh. A, Adobe General Terms of Use (Oct. 3, 2025).

First, Section 14.1 requires customers to file a "written Notice of Claim" with Adobe to provide the parties with an opportunity to resolve any dispute informally. *Id.* at *35. "The Notice of Claim must provide Adobe with fair notice of [the customer's] identity, a description of the nature and basis of [the customer's] Claim, and the relief [the customer is] seeking, … and cannot be combined with a Notice of Claim for other individuals." *Id.* "If any dispute related to [the customer's] Claim is not resolved within 30 days of receipt, any resulting legal actions must be resolved through either small claims court or final and binding arbitration, including any dispute about whether arbitration is required for the dispute…." *Id.* at *35-36.

Second, Section 14.1 of Adobe's TOU also provides that neither party may "initiate legal action until 30 days after the Notice of Claim is received" and establishes a contractual limitations period "permanently barr[ing contract claims] if not brought within one year of the event resulting in the Claim." *Id.* at *36.

Third, Adobe's TOU has a class action waiver. *Id.* at *36 ("14.2 No Class Actions").

Foret alleges that "Adobe violates consumer protection laws in four main ways." First, he contends that Adobe's marketing is deceptive and misleading. Second, he contends that Adobe inadequately discloses its subscription terms. Third, he contends that Adobe's subscription terms constitute an unfair business practice. And fourth, he contends that Adobe makes cancelling subscriptions too difficult. Complaint ¶ 96.

United States District Court
Northern District of California

Foret alleges that he filed a Notice of Claim with Adobe on October 1, 2024, along with "other individuals seeking to arbitrate their claims." Complaint ¶ 198. On October 31, 2024, Adobe informed Foret that his Notice of Claim was inadequate and that Foret should submit a new notice. Complaint ¶ 201.[2] On May 23, 2025, Foret filed a demand for arbitration alongside other claimants, all of whom paid their required arbitration fees. Complaint ¶¶ 198, 201-04. Adobe declined to pay the required $192,500.00 in filing fees, refused to engage in arbitration of Foret's dispute, and argued in a May 30, 2025, letter that Foret's dispute must be heard in small claims court. Complaint ¶¶ 205–209.

Foret filed this lawsuit on October 27, 2025. Dkt. 1. Foret seeks to represent a nationwide class consisting of "[a]ll natural persons in the United States who, within the applicable statute of limitations … paid for Adobe subscriptions." Complaint ¶ 225. Foret seeks a declaratory judgment that Adobe's small claims provision is unenforceable as well as damages, restitution, declaratory and injunctive relief, and fees and costs for Adobe's alleged violations of California's Automatic Renewal Law (ARL), Consumer Legal Remedies Act (CLRA), False Advertising Law (FAL), and Unfair Competition Law (UCL). Complaint ¶ 16. Adobe now moves to dismiss, stay, or strike Foret's complaint under Rule 12(b)(1), 12(b)(6), and 12(f).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to establish a federal court's subject matter jurisdiction may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). When considering a facial challenge, the Court must "take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

---

[2] Adobe allegedly rejected Foret's October 1 Notice of Claim because it violated the TOU's requirement that such notice "cannot be combined with a Notice of Claim for other individuals." Foret's Notice, which was sent simultaneously with other notices, "had been delivered by the shipping service together in one box instead of arriving individually." Complaint ¶ 201.

complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Rule 12(f) allows the Court to "strike ... any redundant, immaterial, impertinent, or scandalous matter." Motions under that rule are generally disfavored and not granted unless the moving party can clearly show that the challenged material could not possibly relate to the controversy and that allowing it to remain would cause significant prejudice. *See, e.g., Digit. Verification Sys., LLC v. Foxit Software Inc.*, 21-CV-08529-YGR, 2022 WL 2800081 (N.D. Cal. Jan. 11, 2022); *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012); 5C Wright & Miller, FED. PRAC. & PROC. CIV. § 1382 (3d ed.) (collecting cases). Motions to strike should be viewed in light most favorable to the nonmoving party. *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal. 2024). If there is any doubt as to the relevancy of the material, then the court should deny the motion. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

United States District Court
Northern District of California

**ANALYSIS**

Adobe moves to dismiss or stay Foret's action on four grounds. First, Adobe argues that this suit should be dismissed or stayed under the first-to-file rule, the claims-splitting doctrine, or this Court's inherent authority because of the existence of a potentially duplicative action before a different judge of this Court. Second, Adobe argues that Foret failed to meet a condition precedent to bringing suit. Third, Adobe argues that Foret fails to state a claim on any of his causes of action. And fourth, Adobe argues that the class action waiver in its TOU bars Foret's class allegations. The Court considers each in turn.

**I. First-to-File Rule, Claims-Splitting Doctrine, and Inherent Authority**

Adobe argues that the Court should dismiss Foret's suit under the first-to-file rule, the rule against splitting claims, or the Court's inherent authority because this suit is duplicative of another earlier-filed suit, *Marquez v. Adobe*, ECF No. 5:25-cv-06562-NC (N.D. Cal. Aug. 4, 2025). In *Marquez*, the plaintiffs argue that Adobe's subscription sign-ups are deceptive because they mislead consumers into signing up without disclosing important renewal and cancellation policies such as early termination fees. ECF No. 5:25-cv-6562-NC, Dkt. No. 1, Complaint at 2–3. The *Marquez* plaintiffs allege UCL, FAL, and CLRA causes of action, as does Foret, while also pursuing conversion, unjust enrichment, and negligence misrepresentation claims.

The first-to-file rule allows a district court, as a matter of comity, to transfer or "stay proceedings if a similar case with substantially similar issues and parties was previously [or first] filed in another district court." *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239–40 (9th Cir. 2015).

There are two problems with Adobe's invocation of the first-to-file rule. First, the parties in this case are not the same as the parties in *Marquez*: Although Adobe is a defendant in both cases, Foret is not a party in *Marquez* and will not be unless and until a class is certified in that case. At present, both cases involve unique plaintiffs pursuing their own claims. Second, the first-to-file rule generally applies where cases involving the same parties and issues have been filed in *different* courts. *See Alltrade*, 946 F.2d at 625. Where two cases involving similar issues or parties have both been filed in this district, that circumstance is addressed through the court's related-case

rule. *See* N.D. Cal. Civ. L.R. 3-12. And the judge presiding over *Marquez* has already concluded that this case is not related to *Marquez*. Dkt. No. 17. For both reasons, comity does not favor precluding Foret from pursuing his claims against Adobe while *Marquez* is pending.

Nor does the rule against claim-splitting apply here. That rules provides that a plaintiff may not bring two different actions "involving the same subject matter at the same time in the same court and against the same defendant." *See Adams v. Cal. Dep't of Health Srvcs*., 487 F.3d 684, 688 (9th Cir. 2007); *Taylor v. Sturgell*, 553 U.S. 880 (2008). But Foret is not a party in the *Marquez* action. As a result, he is not impermissibly splitting his claims against Adobe across multiple actions.

Finally, Adobe argues that the Court should stay this action under its inherent authority to manage its docket because "[a]llowing two materially identical lawsuits to proceed simultaneously wastes judicial and the parties' resources." Motion to Dismiss at 12–13. But the instant lawsuit and the *Marquez* lawsuit are not materially identical as the named plaintiffs are not the same, no class has been certified in *Marquez*, and the causes of action, though overlapping in some respects, are not identical. At this stage of the proceedings, i.e., before the certification of any classes in either this or the *Marquez* action, no judgment in either case would have any preclusive effect on the other. The Court thus declines to exercise its inherent authority to stay this suit.

## II. Condition Precedent and Timeliness

Adobe argues that Foret's suit is barred by Adobe's TOU because Foret failed to satisfy the condition precedent established in the TOU and because Foret's suit is untimely under the TOU's contractual limitation period. Motion to Dismiss at 13–14.

### A. Condition Precedent

Adobe argues that Foret failed to follow the contractually agreed upon steps required before either party can sue in court. MTD at 13–14. Adobe's TOU provides, "If you have any concern or dispute that Adobe Customer Care is unable to resolve ("Claim"), you agree to first try to resolve the dispute informally and in good faith by contacting us and providing a written Notice of Claim," which must include the claimant's "notice of your identity, a description of the nature and basis of [the] Claim, and the relief [they] are seeking …, and cannot be combined with a

Notice of Claim for other individuals." Adobe argues that Foret "does not allege that he contacted Customer Care," that Foret's Notice of Claim did not provide adequate information, and that the notice "was submitted in combination with notices for 1,124 other persons purportedly represented by the same law firm." Motion to Dismiss at 14.

Each of Adobe's arguments are flawed. Adobe's TOU do not clearly *require* complaining to Adobe Customer Care before filing a written Notice of Claim. They merely provide that, if Foret had "any concern or dispute that Adobe Customer Care is unable to resolve," Foret would initiate informal dispute resolution by providing a Notice of Claim. Under the plain terms of the TOU, Foret could have had a "concern or dispute" that he thought Adobe Customer Care would have been unable to resolve without needing to contact Adobe Customer Care itself. And Adobe's TOU does not clearly prohibit sending multiple individual Notices of Claim "in the same container as other claimants." Opposition at 9. Finally, the Court must accept, for the purposes of Adobe's Rule 12(b)(6) motion, Foret's allegation that the notice complied with Adobe's TOU.[3]

Therefore, Adobe has not shown that Foret failed to satisfy a condition precedent to filing suit.

**B. Timeliness**

Adobe argues that Foret's claims are untimely because they fall outside the TOU's contractual limitations period of one year. Adobe's TOU provides that claims "related to the Terms, Services, or Software are permanently barred if not brought within one year of the event resulting in the Claim." Dkt. No. 1-1. Foret purchased his ABM subscription to Adobe's Creative Cloud in April 2022 and cancelled his subscription in September 2023.[4] Thus, Adobe argues, Foret was required to file his complaint by September 2024. Motion to Dismiss at 16.

---

[3] California generally applies the "substantial compliance" doctrine, which "is commonly understood to mean 'compliance with the substantial or essential requirements of something … that satisfies its purpose or objective even though its formal requirements are not complied with." *In re A.V.*, 11 Cal. App. 5th 697, 709 (2017) (quoting Merriam-Webster Law Dict. (as of May 12, 2017)). Foret's conduct—sending a Notice of Claim and later submitting an arbitration demand, Complaint ¶¶ 198, 201, 204—appears to have constituted substantial compliance with the process requirements of Adobe's TOU by notifying Adobe of the "substantial or essential" elements of his dispute.

[4] Foret purchased an annual Lightroom subscription from Adobe in July 2025. Complaint ¶ 17.

In response, Foret argues that the one-year contractual limitations period is unconscionable. A contract is unconscionable if it is both procedurally unconscionable because "one of the parties lacked a meaningful choice in deciding whether to agree," and substantively unconscionable because it "contains terms that are unreasonably favorable to the other party." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). Procedural and substantive unconscionability are considered on a sliding scale, meaning that a finding of great procedural unconscionability requires a lesser degree of substantive unconscionability to render the provision unenforceable, and vice versa. *Id.*

**1. Procedural Unconsionability**

One way that a contract can be procedurally unconscionable is if there was "oppression" or "surprise" involved in its formation. Oppression means a "lack of negotiation and meaningful choice." *Id.* at 1090. Adobe, "a large worldwide company," offered Foret, an individual person, a "standard form [TOU] not subject to negotiation." Opposition at 10–11; *see also Ronderos*, 114 F.4th at 1090. Thus, there is at least "an element of adhesion," and thus a "lack of negotiation and meaningful choice." *Ronderos*, 114 F.4th at 1090. Adhesion alone renders a contract procedurally unconscionable.

Foret argues that the degree of procedural unconscionability here is even greater because of the surprise to which he was subject. Surprise exists when "the allegedly unconscionable provision is hidden within a prolix printed form." *Id.* at 1091. As Foret notes, Foret was not required to read through the TOU before signing and the TOUs "are forty-four pages long, the limitations period does not appear until page 34, and there is no heading, let alone a prominent one, identifying the reduced limitations period." Opposition at 11. And, as Foret also points out, the limitations provision is written in "the passive voice" and "avoid[s] calling attention to the fact that it is something the consumer must do." Opposition at 11. Thus, there is at least a moderate element of surprise in the contract as alleged.

Adobe argues that there is no oppression because Foret had other options for subscriptions. Reply at 7. But the fact that Foret could have subscribed to a different service does not eliminate the adhesive nature of the TOU or the surprise evident in its structure and language. Adobe also

argues that there is no "surprise" because, in considering ostensibly similar facts in *Singh v. Adobe, Inc.*, 797 F. Supp. 3d 1038, 1047 (N.D. Cal. 2025), a different judge in this district concluded that the TOU provided reasonably conspicuous notice. Reply at 7–8. But the cited portion of *Singh* dealt with whether Adobe's notice was reasonably conspicuous for the purpose of determining whether Singh and Adobe had formed a contract, not whether that contract was procedurally unconscionable. *Singh*, 797 F. Supp. 3d at 1047–48.

**2. Substantive Unconscionability**

Substantive unconscionability depends on the fairness of the contract's terms, especially "whether one party used their superior bargaining position to impose terms that are 'overly harsh, unduly oppressive, or unfairly one-sided.'" *Ronderos*, 114 F.4th at 1094. One-sided provisions, those that impose notice requirements and limitations periods on only one party but not the other, can be substantively unconscionable. *Id.*

Here, Foret has pleaded that Adobe's contractual limitations period is substantively unconscionable. The relevant language of the TOU provides that "Claims related to the Terms, Services, or Software are permanently barred if not brought within one year of the event resulting in the Claim." And the TOU defines "'Claim'" as "any concern or dispute that Adobe Customer Care is unable to resolve." Thus, only claims brought by Adobe's customers are subject to the shortened limitations period.

Adobe argues that the TOU applies to both Foret and Adobe by pointing to other provisions in the TOU that apply to both users and Adobe. Opposition at 9. Section 14.1 refers to both parties when it provides, "Neither party shall initiate legal action until 30 days after the Notice of Claim is received." Section 14.5 provides, "If *either party* files a Claim in arbitration that could have been brought in small claims court, the other party may provide notice that it wants the case decided in small claims court … Additionally, *either party* shall be entitled to apply for preliminary injunctive remedies (or an equivalent type of urgent legal relief in any jurisdiction) …." Opposition at 9 (emphasis added). But neither provision undermines the TOU's clear definition of "Claim." And both cited provisions have force even if the contractual limitations

period applies only to Foret's claims against Adobe.[5]

Because the contractual limitations provision is both procedurally and substantively unconscionable, it is unenforceable and does not bar Foret's claims.

## III. Motion to Dismiss for Failure to State a Claim

### A. Reliance

Adobe argues that Foret has not alleged actual reliance, as required to state a UCL, FAL, or CLRA claim. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020). To adequately plead reliance, Foret must "establish it to be plausible that a reasonable man would attach importance to the existence or nonexistence of the misrepresentation in determining his choice of action in the transaction in question." *Id.* (quoting *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017) (cleaned up). "[A]t the motion to dismiss stage, actual reliance is inferred from the misrepresentation of a material fact." *Id.* (cleaned up).

Foret has adequately alleged reliance because he alleges that he relied on Adobe's alleged misrepresentation of important terms of his subscription "such as the contract length, the difficulty of cancellation, the imposition of termination fees, or limitations on timing." Complaint ¶ 270. Foret and other proposed class members relied on Adobe's "representations and omissions in deciding to enroll" and "were led to believe that the subscription terms were straightforward and cancellation would be simple." Complaint ¶ 271. Foret says that "[a]s a result of Adobe's deceptive conduct, [he] suffered actual economic injury." Complaint ¶ 273.

Foret alleges that he signed up for an annual, billed monthly subscription, and went "through the Subscription Flow," i.e. the sign-up process. Complaint ¶ 194. The sign-up process includes multiple screens and choices for users to make. Complaint ¶¶ 97–126. Foret alleges that Adobe's "Subscription Flow" misleads users "into believing they are agreeing to a month-to-month plan that can be cancelled at any time and are not made aware of material terms of the automatically renewing subscription, including its cancellation terms." Complaint ¶ 127.

[5] The other authorities Adobe cites are inapplicable as they involved bidirectional limitations, not unidirectional or one-sided ones. *See* Reply at 9; *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032–33 (9th Cir. 2016).

According to Foret, "Adobe's failure to disclose key terms—including how and when to cancel, the consequences of cancellation, and the availability of refunds—prevents consumers from making informed decisions at the point of purchase." Complaint ¶ 160.

Here, Foret alleges that, after purchasing a subscription to Adobe's Creative Cloud product, he "cancelled his subscription in September 2023, encountering many obstacles in the process, and paid a termination fee of $84." Complaint ¶ 195; *see also id.* ¶¶ 194, 261, 273, 286. Foret alleges that "[a]s a result of" Adobe's failure to disclose matters including its cancellation procedures, the consequences of early cancellation, and the availability of refunds, he "was not fully aware of the automatic renewal program he was entering into" and "did not receive clear notice that his subscriptions would continue until canceled" or "that canceling would trigger significant fees or render payments non-refundable." Complaint ¶ 161. Because Foret pleads that he went "through the Subscription Flow" and relied on the information provided (or not) therein, he plausibly pleads reliance on Adobe's alleged misrepresentations during that sign-up process. Adobe's motion to dismiss for failure to plead reliance is therefore denied.

**B. Whether "Annual, Billed Monthly" is Misleading**

Adobe argues that its labeling of certain subscriptions as "annual, billed monthly," or ABM, for plans that charge the subscriber monthly for an annual commitment was not misleading. MTD at 18-19. Foret's claims under the UCL, FAL, and CLRA are "governed by the 'reasonable consumer' test," which considers whether "members of the public are likely to be deceived." *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (cleaned up). "California courts [] have recognized that whether a business practice is deceptive will usually be a question of fact[.]" *Id.*

Here, Foret plausibly pleads that a reasonable consumer would be deceived by Adobe's subscription sign-up process. The first page a potential Adobe subscriber saw would disclose what appeared to be monthly prices but were actually annual rates divided across 12 payments under the ABM plans. Complaint ¶¶ 102, 103. After Adobe more clearly distinguished different types of subscription plans, it still preselected ABM and informed the customer (below that price and "in significantly smaller and less-contrasting text") that a cancellation fee would apply if the user

United States District Court
Northern District of California

cancelled their subscription before a certain date. Complaint ¶¶ 106, 107. The sign-up process provided the user with three options, monthly, “Annual, paid monthly,” and “Annual, prepaid.” The “Annual, paid monthly” option listed the monthly price and smaller text reading, “*Fee applies if you cancel after 14 days*.” Complaint ¶ 109. By contrast, the “Annual, prepaid” option provided the annual price and smaller text reading, “*No refund if you cancel after 14 days*.” Complaint ¶ 109. A later sign-up process had three functionally identical options: “Monthly,” “Annual, billed monthly,” and “Annual, prepaid.” Complaint ¶ 125. Foret alleges that “Adobe’s advertising suggests a flexible monthly plan, while in reality these plans commit users to a full year with penalties for early cancellation.” Complaint ¶ 128. Foret fairly alleges that the indication of some plans as entailing a “monthly payment” suggests to consumers that “they can cancel at any time, which is not true,” and thus “misleads consumers into thinking they are signing up for a more flexible plan than they actually are.” Complaint ¶ 129. Put differently, despite its name, the “Annual, billed monthly” plan, by listing its price on a monthly basis, could plausibly mislead consumers into thinking that they were signing up for a monthly plan, albeit of fixed duration, as opposed to an annual plan that spaces out payments by month. Complaint ¶ 131–34. A reasonable consumer facing the multitude of options and series of pages to sign up for a subscription could plausibly have been misled as to what they were signing up for and the terms of their subscription.

In support of its argument, Adobe cites *United States v. Adobe, Inc.*, 791 F. Supp. 3d 966 (N.D. Cal. 2025), in which the court held that Adobe’s display of its three subscription payment plan options—Monthly, Annual Paid Monthly, and Annual Prepaid—would not have misled a reasonable consumer. *Id.* at 984–85. But *Adobe*’s conclusion regarding the Restore Online Shoppers’ Confidence Act does not, as a legal matter, compel the conclusion that the use of the ABM label here was misleading in the context of the overall Subscription Flow. And the *Adobe* court also concluded that other aspects of the sign-up process were plausibly misleading. The court concluded that “Adobe did not clearly and conspicuously disclose [] the” early termination fee because, as with the sign-up screen here, *see* Complaint ¶ 109, the sign-up screen read, “Fee applies if you cancel after 14 days,” 791 F. Supp. 3d at 985. The *Adobe* court noted that the “text regarding a fee appears in small, italicized text underneath the bolded, large font disclosing the

price of the subscription" and that the text "does not reference an 'early termination fee'" and was "easy to miss." *Id.* Here, the information about the cancellation fee is similarly "easy to miss." A reasonable consumer could fairly be misled as to what the fee is, when exactly it applies, and the amount it would be. The Court thus concludes that, considered as a whole, a reasonable consumer could plausibly have been misled by subscription sign-up process.

Accordingly, Adobe's motion to dismiss Foret's claims for failure to plead that its representations were misleading is denied.

**C. "Consumer" Under the CLRA**

Adobe argues that Foret has failed to allege that he purchased his Adobe subscriptions "for personal, family, or household purposes," as required by the CLRA. MTD at 19. A "consumer" under the CLRA is "an individual who seeks or acquires, by purchase or lease, any goods or services for *personal, family, or household* purposes." Cal. Civ. Code § 1761(d) (emphasis added). The only allegations Foret identifies regarding the purpose of his purchase of Creative Cloud are paragraphs 138 and 257, which allege that he "sought or acquired Adobe's [products] for personal, family or household purposes." Complaint ¶¶ 138, 257 (cited on Opposition at 17). Such a "formulaic recitation of [one of] the elements of [the] cause of action" is inadequate to plead the elements of a valid claim. *See Twombly*, 550 U.S. at 555. Accordingly, the Court dismisses Foret's CLRA claim with leave to amend.

**D. Equitable Relief**

Adobe argues that plaintiffs have failed to plead the inadequacy of legal remedies or a risk of future harms and that plaintiffs' claims for equitable relief should therefore be dismissed. MTD at 19-20. Foret alleges that he faces a threat of future harm because he is an Adobe subscriber and Adobe could inflict "automatic renewals, cancellation decisions, and subscription-related charges governed by the same unlawful disclosure and renewal practices." Opposition at 18. Foret argues that he needs injunctive relief to avoid having to sue Adobe again for its allegedly misleading or noncompliant practices. Complaint ¶ 290 ("Absent injunctive relief, current and future consumers will be forced to seek repeated legal remedies to recover payments made to Adobe under misleading or noncompliant subscription terms.").

"[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling" because in "some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 969–70 (9th Cir. 2018). Alternately, a consumer may plead the threat of future harm in the form of "purchas[ing] the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. In *Davidson v. Kimberly Clark Corp.*, plaintiff Davidson adequately pleaded "an imminent or actual threat of future harm caused by Kimberly-Clark's allegedly false advertising" of its wipes as "flushable." *See id.* at 970. Davidson pleaded that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet" and "would purchase truly flushable wipes manufactured by [Kimberly-Clerk] if it were possible." *Id.* But she "ha[d] no way of determining whether the representation 'flushable' is in fact true." *Id.* (cleaned up).

Here, Foret has not plausibly alleged that he has no way of determining whether Adobe's representations are true absent equitable relief. Foret cancelled his Creative Cloud subscription in September 2023 and then purchased a new subscription to Adobe's Lightroom on an annual plan, not an ABM one. Complaint ¶¶ 17, 197. Foret is now fully aware of Adobe's practices and the meaning of "annual, billed monthly." Unlike the plaintiff in *Davidson*, Foret does not have to rely on Adobe's representations. He merely needs to know what he already knows about what "annual, billed monthly" entails with respect to the other two subscription plans. Foret therefore has not pleaded standing to pursue a claim for injunctive relief. Adobe's motion to dismiss Foret's claims for equitable remedies is granted on that basis.

**E. Declaratory Relief**

Foret "seek[s] a declaratory judgment that the Small Claims Provision [of the TOU] is unconscionable and unenforceable, that Adobe's [TOU] do not contain an agreement to settle a dispute by arbitration within the meaning of the [Federal Arbitration Act], and that Adobe has breached its agreement to arbitrate with Plaintiff and the Class members or has otherwise waived its right to arbitrate." Complaint ¶ 254. Adobe argues that Foret has failed to plead an entitlement

to declaratory relief because the small claims provision is not unconscionable, the TOU has a valid arbitration agreement, and Adobe did not violate the arbitration agreement by opting for small claims court. Motion to Dismiss at 20–23.

"In considering a motion to dismiss [a claim for declaratory relief], the only question is whether, on the basis of the allegations, a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment and not whether the plaintiff is entitled to a favorable declaration." *Wi2Wi, Inc. v. Twin City Fire Ins. Co.*, 2020 WL 4913489, at *6 (N.D. Cal. May 5, 2020) (quoting 22A Am. Jur. 2d Declaratory Judgments § 228); *see also* Mary Kay Kane & Adam N. Steinman, 10B Fed. Prac. & Proc. Civ. (Wright & Miller) § 2757 (4th ed. April 2026 Update).

Before considering Adobe's specific arguments regarding Foret's declaratory judgment claim, the Court must consider its jurisdiction to hear that claim under Article III of the U.S. Constitution. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration…." 28 U.S.C. § 2201. Crucially, however, the Declaratory Judgment Act does not provide an independent basis for invoking federal jurisdiction; instead, the plaintiff pursuing such a claim must plead the independent existence of a "controversy within [the federal courts'] jurisdiction." *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court.").

Here, Foret has not pleaded facts establishing an ongoing controversy between the parties regarding the TOU's claims resolution provisions. Having filed suit in federal court, Foret does not plead any desire to pursue arbitration under the TOU and does not seek an order compelling Adobe to arbitrate the claims at issue here. Similarly, although Adobe invoked the small claims provision in refusing to arbitrate, it has not invoked the small claims court provision as a bar to this suit. Given Foret's desire that the parties' substantive dispute be resolved in federal court rather than pursuant to the terms of the TOU's claims resolution provisions, any disagreement between the parties with respect to those provisions is purely academic at this point in time. Adobe's motion to dismiss Foret's declaratory judgment claim is therefore granted for lack of

United States District Court
Northern District of California

subject matter jurisdiction.

**IV. Motion to Strike Class Claims**

Adobe argues that Foret's class action claims should be stricken under Rule 12(f) because Section 14.2 of Adobe's TOU provides that Foret "may only resolve disputes with us on an individual basis, and [] may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action." Dkt. No. 1-1, Exh. A, at *36.

California law generally invalidates such class action waivers. Under California's *Discover Bank* rule, a class action waiver is unconscionable "when the waiver is found in a consumer contract of adhesion," in a dispute that "predictably involve[s] small amounts of damages," and when the "the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148, 162–63 (2005). All of those circumstances are present here and would thus appear to render Section 14.2 unenforceable.

A complicating factor here, however, is that the class action waiver is included in a claims resolution provision that also mandates arbitration, and the Supreme Court has held that "California's *Discover Bank* rule is pre-empted by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). That is because compelling a party to arbitrate claims on a class-wide basis "interferes with fundamental attributes of arbitration" and is thus "inconsistent with the FAA." *Concepcion*, 563 U.S. at 344; *see also Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024).

But Adobe has not sought to compel arbitration of Foret's claims. Instead, Foret's claims are proceeding in federal court. Under these circumstances, application of the *Discover Bank* rule cannot possibly interfere with any arbitration in a manner inconsistent with the FAA. *See, e.g.*, *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1143 (2013) (concluding that "state-law rules that do not 'interfere with fundamental attributes of arbitration do not implicate *Concepcion*'s limits on state unconscionability rules"). As a result, the rule is not preempted by the FAA, and the TOU's class action waiver is unenforceable under California law. Adobe's motion to strike Foret's class action allegations is therefore denied.

**CONCLUSION**

For the reasons set forth above, the Court denies Adobe's motion to stay or dismiss this action under the first-to-file rule, the doctrine against splitting claims, and this Court's inherent authority to manage its docket; denies Adobe's motion to dismiss for failure to satisfy a condition precedent to filing suit or for untimeliness; denies Adobe's motion to dismiss Foret's FAL and UCL claims; and denies Adobe's motion to strike Foret's class allegations. The Court grants Adobe's motion to dismiss Foret's claims for equitable and declaratory relief and his CLRA claim. These dismissals are without prejudice and with leave to amend. Any amended complaint shall be filed within 28 days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: September 14, 2026

P. Casey Pitts
United States District Judge